Randolph K. REEVES, Petitioner,

v.

Frank X. HOPKINS, Respondent.

No. CV90–L–311.

United States District Court,
D. Nebraska.

Dec. 16, 1994.

Dorothy A. Walker, Mowbray & Walker, P.C., Paula B. Hutchinson, Lincoln, NE, for petitioner.

Don Stenberg, Atty. Gen., J. Kirk Brown, Asst. Atty. Gen., Lincoln, NE, for respondent.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This is a habeas corpus case, brought pursuant to 28 U.S.C. § 2254, challenging Petitioner's conviction for two murders and the death sentences which resulted. Pending before me is the thoughtful and comprehensive report, recommendation, and order (Filing 111) of the Honorable David L. Piester, United States Magistrate Judge, regarding Petitioner's amended petition for habeas corpus.

In his report and recommendation, Judge Piester addressed forty-four claims [1] asserted in Petitioner's amended petition and found that:

1. Petitioner abandoned certain claims (claims 3, 7, 15, 16, 33, 35, 37, 41, 43 and part of 44 (that portion not related to ineffective assistance of trial counsel)). (Filing 111, at 10–15.)

2. Certain of Petitioner's claims were procedurally defaulted (claim 20(c) (that part claiming that all types of first-degree murder except felony murder have lesser included offenses and, thus, Nebraska's felony murder rule is unconstitutional), claim 39, claim 40 (to the extent that it raises the failure to make factual findings regarding nonstatutory mitigating factors), and claim 44 (relating to ineffective assistance of trial counsel)), and such default had not been excused. (*Id.* at 20–31.)

3. All the claims properly before the court regarding the guilt-and-innocence phase of trial (claims 17, 18, 20, 21, 22 and 23) were without merit. (*Id.* at 31–52.)

4. Whether or not procedurally defaulted, claims 19 and 42 regarding Nebraska's definition of reasonable doubt should be resolved against Petitioner pursuant to *Victor v. Nebraska,* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). (*Id.* at 18–20.)

5. Prior errors in sentencing (if any) which took place before the "reweighing" that occurred in the Nebraska Supreme Court on remand from the United States Supreme Court were irrelevant because it was the Nebraska Supreme Court's action on remand that resentenced Petitioner (claims 1, 2, 4, 8, 9, 10, 11, 12, 13, 14, 24, 25, 28, 29, and 30). (*Id.* at 10.)

6. The Nebraska Supreme Court violated Petitioner's constitutional right to due process of law, entitling Petitioner to resentencing, because (a) on remand from the United States Supreme Court, the state's highest court sentenced Petitioner in a manner not prescribed by state statute (claim 31); and (b) on remand from the United States Supreme Court, the state's highest court acted as an unreviewable sentencing panel when sentencing Petitioner (claim 32). (*Id.* at 52–61.)

7. The court should not reach certain claims (claims 5, 6, 26, 27, 34, 36, and 38) in light of the recommendation regarding resentencing because those claims are not likely to recur at resentencing. (*Id.* at 61–62.)

Accordingly, Judge Piester recommended that the amended petition be granted in part and denied in part, and that Petitioner's sen-

---

1. For ease of reference, the numbered claims described on pages 6–9 of Judge Piester's report and recommendation are attached to this opinion as appendix A.

tences be reduced to life in prison unless, within a reasonable time after judgment, capital resentencing proceedings were initiated in state district court. In a related order, Judge Piester also denied Petitioner's request for an evidentiary hearing, for discovery, and to expand the record.

Both Petitioner (Filing 116) and Respondent (Filing 114) have objected to Judge Piester's report and recommendation. However, Petitioner has not appealed from Judge Piester's order denying an evidentiary hearing, denying discovery, and denying the request to expand the record.

After de novo review of the report and recommendation and the objections filed thereto, I agree with each and every one of Judge Piester's ultimate findings of fact, conclusions of law, and recommendations. I adopt the report and recommendation as supplemented by the following discussion of the objections of Petitioner and Respondent.

## I.

In order to provide an appropriate context for my discussion of the objections to the report and recommendation, I shall first review the general factual and procedural history of this case. I shall then examine in more depth the proceedings before the Nebraska Supreme Court which give rise to the challenged death sentences.

### A.

#### 1.

There is no doubt that Randolph .K. Reeves (Reeves), who had a criminal history but no significant history of violence [2] prior to the murders, killed two women with a kitchen knife in Lincoln, Nebraska, in the early morning hours of March 29, 1980.[3] There is also no doubt that Reeves' capacity to appreciate what he was doing was grossly impaired by drug and alcohol use on the evening of the murders.

Reeves killed the women while in the process of attempting to sexually assault Janet Mesner, to whom he was distantly related. Mesner had also been Reeves' friend, although the two were never emotionally or sexually intimate. Reeves had visited Mesner's home on a number of previous occasions.

Reeves apparently broke into the building where Mesner lived, and as he was trying to rape her (stabbing Mesner seven times in the process), Victoria Lamm, who shared the apartment with Mesner, walked in on the struggle and was in turn stabbed by Reeves. Lamm passed out almost immediately as knife wounds penetrated the main pulmonary artery of her heart and another thrust penetrated her liver.

Reeves had been drinking heavily on the day of the killings, and he had also taken a hallucinogenic drug (peyote). At trial, a friend of Reeves, who had been with him earlier that morning, described Reeves as being in a "stupor" two hours and fifteen minutes before the stabbings were reported to police. The friend further testified that Reeves had told him earlier that morning that he intended to visit a girl.

Laboratory tests later confirmed the presence of mescaline in Reeves' system. It was also determined that Reeves' blood-alcohol level was .149 percent approximately three hours after the assaults occurred.[4] There was testimony at trial that Reeves' blood-alcohol level at the time of the assaults may have been as high as .230 percent at 2:00 a.m.

After the assaults, Reeves exited the building[5] where the stabbings had taken place, leaving behind, among other things, his wallet containing identifying information. When

---

2. Indeed, Reeves, a Native American, was adopted as a child and raised in the Quaker religious faith. (Filing 71, Ex. 26, Appellant's Br.Neb.Sup.Ct. *Reeves I*, at 21.)

3. In the amended petition, Reeves conceded that "[a]t his trial the Petitioner did not dispute that he had killed Janet Mesner and Victoria Lamm on March 29, 1980." (Filing 58, at 5.)

4. This was more than the blood-alcohol limit for driving a motor vehicle in the State of Nebraska. *See* Neb.Rev.Stat. §§ 39–669.07 (Reissue 1978, 1984, 1988) & 60–6, 196 (Supp.1993).

5. The crime occurred in a building where those of the Quaker religious faith meet. Mesner was the live-in caretaker.

Reeves left, Mesner, who was still conscious, called 911. Because Reeves had ripped out the phone cord in the upstairs bedroom where the struggle had taken place, Mesner was forced to use the phone on the first floor.

Police responded to Mesner's call. They found Lamm's two-year-old daughter, unharmed, walking out of the north upstairs bedroom of the house. They also found Mesner on the first floor. Lamm's body was found in the south upstairs bedroom. The condition of this bedroom indicated that a violent struggle had taken place. The floor was covered with blood.

At the scene of the crime, and later at the hospital, Mesner, although in shock and suffering great pain, reported the crimes to police, identifying Reeves as the man who had stabbed her, raped her, and killed her roommate. She identified Reeves twice by name and gave a physical description of him once.

About 4:46 a.m., approximately an hour after Mesner's call to police, Reeves was arrested as he tried to walk across a main street in Lincoln, Nebraska. At the time of his arrest, Reeves had blood on his hands and clothing, the fly of his trousers was unzipped, and his penis was exposed.

Tests later determined that the blood on Reeves' clothing and on his penis was the same blood type as that of Mesner. Tests also confirmed that the acid phosphate level of a vaginal sample taken from Mesner was consistent with sexual intercourse having occurred. However, experts were unable to find semen on Reeves or in vaginal swabs taken from the two women. Semen was found on men's underwear located in Mesner's bedroom, and the secretion matched Reeves' blood type.

Both women died of stab wounds. Mesner lived slightly more than two hours after she first called the police.

After twice being given his *Miranda* rights, Reeves, who has above-average intelligence, told police that while he could not

remember much about the murders, he could remember stabbing and raping Mesner.

Charged with two counts of felony murder (murder in the course of committing a sexual assault or attempted sexual assault), Reeves was found guilty by a jury on both counts. At trial, Reeves contended that he lacked the intent needed for first-degree sexual assault or first-degree attempted sexual assault and, therefore, he was not guilty of felony murder. Alternatively, he argued that if the jury believed he had the requisite intent, he was not guilty by reason of insanity.

### 2.

On September 11, 1981, Reeves was sentenced to death by three state district judges.

State law authorized one of two procedures for initial imposition of the death sentence in cases where the trial judge was not disabled or disqualified: (1) the judge who presided at trial could impose the death sentence, or (2) upon the request of the trial judge, the judge who presided at trial plus two other judges designated by the chief judge of the Nebraska Supreme Court could impose the death penalty. Neb.Rev.Stat. § 29–2520 (Reissue 1989).[6]

Among other things, Nebraska law required the sentencing panel to "set forth the general order of procedure at the outset of the sentence determination proceeding," Neb.Rev.Stat. § 29–2521 (Reissue 1989), and after such proceeding to issue a written determination, including findings of fact "based upon the records of the trial and the sentencing proceeding . . . ." Neb.Rev.Stat. § 29–2522 (Reissue 1989).

Specifically, the sentencing panel, "[a]fter hearing all the evidence and arguments in the sentencing proceeding," was required to consider (1) whether sufficient aggravating circumstances existed to justify imposition of the death penalty; (2) whether sufficient mitigating circumstances existed which approached or exceeded the weight given to the aggravating circumstances; and (3) whether

---

**6.** Although the Nebraska statutes cited in this memorandum and order are from Reissue 1989, the language quoted or referred to also existed at the relevant time, that is, at the time of Reeves'

sentencing (Sept. 11, 1981), decision on direct appeal (Jan. 20, 1984), or decision on remand from the United States Supreme Court (Nov. 8, 1991), as the case may be.

the sentence of death was excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant. *Id.*

State law also required the Nebraska Supreme Court to automatically review any death sentence imposed by a district judge or judges. Neb.Rev.Stat. § 29–2525 (Reissue 1989). Indeed, the Nebraska Legislature specifically found that it was necessary for the state's highest court to "review" all criminal homicide cases:

> In order to compensate for the lack of uniformity in charges which are filed as a result of similar circumstances it is necessary for the Supreme Court to review and analyze all criminal homicides committed under the existing law in order to insure that each case produces a result similar to that arrived at in other cases with the same or similar circumstances.

Neb.Rev.Stat. § 29–2521.01 (Reissue 1989).

Eight aggravating and seven mitigating circumstances are set forth in the state statutes, and the sentencing panel is directed to consider whether these factors warrant the death penalty. Neb.Rev.Stat. § 25–2522 (Reissue 1989). On appeal, the Nebraska Supreme Court is directed to "review and analyze," among other things, "the facts including mitigating and aggravating circumstances...." Neb.Rev.Stat. § 29–2521.02 (Reissue 1989).

If the Nebraska Supreme Court disagrees with the sentencing panel regarding aggravating and mitigating circumstances, "[t]he Supreme Court may *reduce* any sentence which it finds not to be consistent with section[ ] ... 29–2522 [which requires the sentencing panel to, among other things, weigh the statutory aggravating and mitigating circumstances]...." Neb.Rev.Stat. 29–2521.03 (Reissue 1989) (emphasis added). However, nowhere in the state statutes is the Nebraska Supreme Court authorized to "reweigh" the aggravating and mitigating circumstances for purposes of resentencing when the Nebraska Supreme Court first finds that the death sentence imposed by the district court sentencing panel is "not ... consistent with section[ ] ... 29–2522...." *Id.*

Indeed, aside from the ability to "reduce" a death penalty sentence because it does not comply with the Nebraska statute that requires the district court sentencing panel to weigh aggravating and mitigating circumstances, Neb.Rev.Stat. § 29–2521.03, the Nebraska Supreme Court is limited to three orders, none of which allow resentencing through reweighing by the court:

> **Death penalty cases; Supreme Court; orders.** In all cases *when the death penalty has been imposed by the district court,* the Supreme Court shall, after consideration of the appeal, order the prisoner to be discharged, a new trial to be had, or appoint a day certain for the execution of the sentence.

Neb.Rev.Stat. § 29–2528 (Reissue 1989) (emphasis added).

On April 24, 1981, the district court sentencing panel issued an order on sentencing procedure. (Filing 71, at 374 (Journal Entry of 4/24/81).) On May 28, 1981, the panel held a hearing, received evidence, considered a presentence report, and heard argument. (*Id.* (Journal Entry of 5/28/81).) The panel issued a written opinion on September 11, 1981. (*Id.* (Order of Sentence & Commitment at 309–29).)

With regard to the killing of Lamm, the district court sentencing panel found that no statutory mitigating circumstances existed as to her death, and three of the eight statutory aggravating circumstances existed: (1) the murder was committed in an apparent effort to conceal the commission of a crime or to conceal the identity of the perpetrator, Neb. Rev.Stat. § 29–2523(1)(b) (Reissue 1989); (2) the murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence, Neb.Rev.Stat. § 29–2523(1)(d); and (3) at the time the murder was committed, the offender also committed another murder, Neb.Rev.Stat. § 29–2523(1)(e) (Reissue 1989). After considering nonstatutory mitigating evidence, the sentencing panel sentenced Reeves to death for killing Lamm.

The sentencing panel reached similar, but not identical, conclusions with regard to the

death of Mesner.[7] The only difference between the two findings was that the panel did not find that Reeves killed Mesner in an effort to conceal the commission of a crime or to conceal his identity. Neb.Rev.Stat. § 29–2523(1)(b) (Reissue 1989).[8] The panel found that the murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence, Neb.Rev.Stat. § 29–2523(1)(d), and at the time the murder was committed, the offender also committed another murder, Neb.Rev.Stat. § 29–2523(1)(e) (Reissue 1989).

Despite the fact that Nebraska law clearly provided a mitigating circumstance when the perpetrator suffered diminished capacity due to intoxication, Neb.Rev.Stat. § 29–2523(2)(g) (Reissue 1989), and despite the fact that the evidence overwhelmingly supported the existence of that mitigating factor, the sentencing panel denied Reeves the benefit of this mitigating circumstance.

### 3.

On January 20, 1984, the Nebraska Supreme Court affirmed Reeves' conviction and death sentences on direct appeal. *State v. Reeves,* 216 Neb. 206, 344 N.W.2d 433 (1984) [hereinafter *Reeves I* ], *cert. denied,* 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 372 (1984).

However, the *Reeves I* court found that the sentencing panel had erred in two ways:

(1) With regard to the Lamm murder, since there was no sign of defensive cuts on Lamm's body, death resulted swiftly and since there was no indication of sexual assault, the court did not believe Lamm's murder was especially heinous, atrocious, cruel, or manifested exceptional depravity. *Id.,* 216 Neb. at 227–28, 344 N.W.2d at 447 (applying Neb.Rev.Stat. § 29–2523(1)(d) (Reissue 1989)).

(2) Evidence of Reeves' drug and alcohol use in the hours preceding both murders established a mitigating circumstance—i.e., his capacity to appreciate the wrongfulness of his conduct or conform his conduct to the law was impaired. *Id.,* 216 Neb. at 229, 344 N.W.2d at 448 (analyzing Neb. Rev.Stat. § 29–2523(2)(g) (Reissue 1989)).

The *Reeves I* court concluded there were two aggravating circumstances and one mitigating circumstance in each death. *Id.,* 216 Neb. at 229–30, 344 N.W.2d at 448. The court held:

(1) In the Mesner'killing, the aggravating circumstances found in sections 29–2523(1)(d) & (e) existed (crime was especially heinous, etc., and offender committed another murder), and the mitigating circumstance found in section 29–2523(2)(g) (diminished capacity) existed. *Id.*

(2) In the Lamm killing, the aggravating circumstances found in sections 29–2523(1)(b) & (e) existed (murder committed to conceal a crime and offender committed another murder), and the mitigating circumstance found in section 29–2523(2)(g) (diminished capacity) existed. *Id.*

Without explaining whether the errors committed by the sentencing panel were harmless beyond a reasonable doubt or whether the court was conducting some other type of analysis such as appellate resentencing, the Nebraska Supreme Court affirmed Reeves' death sentences. *Id.,* 216 Neb. at 229–31, 344 N.W.2d at 448–49. As noted above, the United States Supreme Court denied certiorari as to *Reeves I.*

Reeves then commenced a state postconviction action. The state district court denied the motion, and Reeves appealed. On March 16, 1990, the Nebraska Supreme Court again affirmed. *State v. Reeves,* 234 Neb. 711, 453 N.W.2d 359 (1990) [hereinafter

---

**7.** To the extent that Judge Piester believed the panel's findings regarding aggravating circumstances as to the Lamm and Mesner killings were identical, (Filing 111, slip. op. at 2), he was in error.

**8.** Given the evidence, it is difficult to understand how the sentencing panel could conclude that Reeves killed Lamm in order to conceal a crime, but did not kill Mesner in an effort to conceal a

crime. The evidence was overwhelming that Reeves did virtually nothing to avoid capture after he left the scene of the crime, leaving behind, as he did, a billfold containing identifying information and, an hour or so after the killing, wandering across a main street in full view of the police while he was covered with blood and with his penis exposed.

*Reeves II* ], *cert. granted, judgment vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 409 (1990).

Reeves sought review of the Nebraska Supreme Court's decision in *Reeves II* in the United States Supreme Court. On November 13, 1990, the United States Supreme Court granted the petition for writ of certiorari, vacated the judgment of the Nebraska court, and "remanded to the Supreme Court of Nebraska for further consideration in light of *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)." *Reeves v. Nebraska,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 409 (1990).

**B.**

On December 4, 1990, the Nebraska Supreme Court set oral argument on the remand for January 10, 1991, and directed the parties to file simultaneous briefs on December 31, 1990. (Filing 94, at 2.) Upon a motion by Reeves' counsel, (*id.* at 3), the brief date was later extended to January 31, 1991. (*Id.* at 28–29.) Oral argument was continued until February 5, 1991. (*Id.* at 30, 32.)

Reeves filed three motions on January 31, 1991, requesting: (1) advance notice if the Nebraska Supreme Court intended to engage in resentencing on appeal, together with a statement of the issues the court deemed relevant to reconsideration of sentencing matters, (*id.* at 19); (2) an evidentiary hearing "at which time the Appellant can offer such evidence as he may have relevant and material to his resentencing, and upon such proper and adequate notice as would permit the Appellant and his counsel to adequately prepare for said hearing," (*id.* at 22); and (3) an order pursuant to Neb.Rev.Stat. § 29–2521 setting forth "a general order of procedure," (*id.* at 24). The Nebraska Supreme Court denied all three of Reeves' motions without explanation on February 1, 1991. (*Id.* at 30, 32.)

Reeves' counsel also requested additional time for oral argument, suggesting that counsel needed at least 20 minutes of oral argument, (*id.* at 16), and the parties were given 20 minutes for oral argument per side. (*Id.* at 30, 33.) Oral argument was conducted on February 5, 1991. (*Id.* at 32.) No transcript of the oral argument before the Nebraska Supreme Court exists. (Filing 74.)

On November 8, 1991, the Nebraska Supreme Court issued its opinion in *State v. Reeves,* 239 Neb. 419, 476 N.W.2d 829 (1991) [hereinafter *Reeves III* ], *cert. denied,* —— U.S. ——, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992).[9] The opinion of the Nebraska Supreme Court may be fairly summarized as follows:

1. The court first stated that it had three options under *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), given the fact that "there has been an error concerning the trial court's finding of aggravating and/or mitigating circumstances": (a) re-examine and reweigh the evidence itself, (b) conduct harmless-

**9.** The Supreme Court denied certiorari in *Reeves III* on October 5, 1992. For practical purposes, that is when this case commenced in this court because, at Respondent's request, the answer date in this case had been stayed until the Supreme Court ruled. (Filings 8, 9.) After the Supreme Court ruled, the case was dismissed on March 10, 1993, upon Respondent's motion, for failure to prosecute. (Filing 15.) The case was reinstated when Petitioner filed a pro se motion showing that the failure to prosecute was the fault of his retained counsel, who had moved from Nebraska and withdrawn from the rolls of active lawyers in the State of Nebraska. (Filings 16, 17, 20.) Permission to proceed in forma pauperis was granted, new counsel was appointed, and counsel was given leave to file an amended petition. The amended petition was filed on October 4, 1993, (Filing 58), and answered on October 18, 1993. (Filing 63.) A briefing sched-

ule was promptly set, but three extensions were requested by the parties, two by Petitioner's counsel and one by Respondent's counsel. (Filings 73, 76, 77, 78, 83, 84, 91, 92.) These extensions were granted by the court. On May 25, 1994, Respondent filed a supplement to the state court records, primarily setting forth the proceedings before the Nebraska Supreme Court in *Reeves III.* (Filing 94.) Briefing was finally completed before Judge Piester on August 3, 1994. (Filing 109.) Judge Piester issued his report and recommendation on November 15, 1994. (Filing 111.) The last objection to the report and recommendation was filed on November 30, 1994. (Filing 116.) Thus, the matter was ripe for decision by me on or about December 10, 1994. *See* NELR § 72.4, at 771 (West 1994) (opposing parties have 10 days to submit a brief in opposition to an objection to a report and recommendation).

error analysis, or (c) remand for a new sentencing hearing. *Reeves III*, 239 Neb. at 423, 476 N.W.2d at 834.

2. The court next stated its understanding of *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), which was that appellate resentencing was only appropriate when such resentencing was "done independently" by the appellate court. *Reeves III*, 239 Neb. at 423–24, 476 N.W.2d at 834–35.

3. The court then examined what it had done in other death penalty cases subsequent to *Clemons:*

a. Without citing *Clemons,* the court affirmed the sentencing panel in a previous case, but also reweighed after giving a limiting construction to an aggravating circumstance, which decision was based upon "our own review of the record, as well as the conclusions of the three-judge panel," *Reeves III*, 239 Neb. at 425, 476 N.W.2d at 835 (discussing *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990)).

b. In another case, the court "summarily adopted the reweighing rule" mentioned in *Clemons,* remarking that in the process the court "relied on the findings of the sentencing panel in reweighing the aggravating and mitigating circumstances when affirming" the conviction. *Reeves III*, 239 Neb. at 425–26, 476 N.W.2d at 835 (discussing *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991)).[10]

4. The court next proceeded to explicitly adopt for the first time what it understood the "rule in *Clemons*" to be, and then applied that rule to Reeves:

a. The rule was that when, as in the case of Reeves, an aggravating circumstance relied upon by the sentencing panel is invalidated by the appellate court and a mitigating circumstance found not to exist by the sentencing

panel is found to exist by the appellate court, resentencing by the district court sentencing panel is unnecessary, *provided* the Nebraska Supreme Court found that the error was harmless beyond a reasonable doubt, *or* if the error was not harmless beyond a reasonable doubt, that the Nebraska Supreme Court, after engaging in de novo examination of the sentencing record and analysis of the mitigating and aggravating circumstances, independently concluded that the death penalty was nevertheless justified. *Reeves III*, 239 Neb. at 426–27, 476 N.W.2d at 836.

b. The court stated:

We apply the rule in *Clemons* and independently consider the circumstances of Reeves' case, rather than remand for a new sentencing hearing. *We henceforth* require our review under *Clemons* to include an independent examination of the trial record, the presentence investigation, and the findings of the sentencing panel in order to determine the existence or nonexistence of aggravating and mitigating circumstances, as well as reweighing of all the factors. See *Parker, supra.* We find this to be the most effective way in which to ensure individualized and fair determination of the propriety of the death sentence in each defendant's case.

*Id.,* 239 Neb. at 427, 476 N.W.2d at 836 (emphasis added).

5. Citing only *Clemons v. Mississippi* and *Parker v. Dugger,* the court relied exclusively upon federal law, not state law, for the authority to adopt and implement what it understood to be the "*Clemons* rule," stating that:

when an appellate court invalidates one or more of the aggravating circumstances, or finds as a matter of law that any mitigating circumstance exists not considered by the sentencing panel in its balancing, the appellate court may, *con-*

10. While it is true that the *Otey* court relied upon *Clemons,* it is also true that its reliance was "summary," i.e., nothing more than a citation to the case. *Otey,* 236 Neb. at 927, 464 N.W.2d at 361. Moreover, before its "summary" reliance, the Nebraska Supreme Court *first* held that the issue—whether the sentencing panel improperly failed to consider a mitigating circumstance because of improper consideration of charged, but not adjudicated, criminal conduct—was procedurally barred. *Id.,* 236 Neb. at 926–27, 464 N.W.2d at 360. Accordingly, it appears that the "summary" adoption of the *Clemons* rule in *Otey* was unnecessary to a resolution of the case.

*sistent with the U.S. Constitution,* reweigh the remaining circumstances or conduct a harmless error analysis.

*Reeves III,* 239 Neb. at 426–27, 476 N.W.2d at 836 (emphasis added).

6. The court then proceeded to conduct "harmless error" analysis and concluded that the sentencing panel's failure "to consider Reeves' intoxication as a mitigating factor," which the court had found to exist in *Reeves I,* was *not* harmless beyond a reasonable doubt. *Reeves III,* 239 Neb. at 427–28, 476 N.W.2d at 836–37.

7. The court next proceeded "to independently reweigh all the aggravating and mitigating circumstances to determine if the death penalty was an appropriate sentence in this case." *Reeves III,* 239 Neb. at 428, 476 N.W.2d at 837.

8. The court found:

a. The record established two statutory aggravating circumstances and one statutory mitigating circumstance in Mesner's death (the murder was "especially heinous," etc., Neb.Rev.Stat. § 29–2523(1)(d) (first prong), because of the great pain the victim suffered and because the murder was committed during the process of a sexual assault; because the murder was committed during the course of another killing (Lamm's), *id.* § 29–2523(1)(e); and because at the time of the offense, the defendant's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the law was impaired by drug and alcohol use, *id.* § 29–2523(2)(g)). *Reeves III,* 239 Neb. at 429–34, 476 N.W.2d at 838–40.

b. The record established two statutory aggravating circumstances and one statutory mitigating circumstance in Lamm's death (the murder was committed to conceal the identity of the perpetrator, Neb.Rev.Stat. § 29–2523(1)(b); the murder was committed during the course of another murder (Mesner's), *id.* § 29–2523(1)(e); and at the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or conform his conduct to the law was impaired by drug and alcohol use, *id.* § 29–2523(2)(g)). *Reeves III,* 239 Neb. at 435–36, 476 N.W.2d at 840–41.

c. Evidence in the record of nonstatutory mitigating factors included: (1) the defendant was a passive, nonviolent person by character and history; (2) Reeves was remorseful for the killings; and (3) according to "several" psychiatrists and psychologists, Reeves had amnesia concerning most of the events of March 29, 1980. *Reeves III,* 239 Neb. at 436, 476 N.W.2d at 841.

9. The court ruled that Reeves' death sentences remained appropriate, stating in its "Conclusion" the following:

We have balanced the aggravating and mitigating factors anew and have determined that the aggravating circumstances outweigh any statutory or nonstatutory mitigating circumstances in this case. Reeves' murders of Mesner and Lamm were senseless and brutal, made more so by the fact that he was a relative and friend of Mesner's. The fact that he stabbed to death two women and sexually assaulted or attempted to sexually assault one of them for no apparent reason is not mitigated by his intoxication on the night of the murders. Reeves was found to be sane at the time of the murders. His impairment by drug and alcohol use did not diminish his capacity to intentionally locate and break into Mesner's house, sexually assault or attempt to sexually assault her, stab her, and then stab her houseguest to death. We do not consider Reeves' remorse, amnesia, usual nonviolent nature, or intoxication sufficient to excuse him from the death penalty. Sentences of death remain the appropriate penalties for Reeves.

*Reeves III,* 239 Neb. at 436–37, 476 N.W.2d at 841.

## II.

▮ I turn now to the first objections filed, those of Respondent (Filing 114). Respondent objects to Judge Piester's finding

and recommendation regarding claims 31 and 32.[11]

Essentially, Judge Piester found that the Nebraska Supreme Court violated Petitioner's constitutional right to due process of law, entitling Petitioner to resentencing, because (a) on remand from the United States Supreme Court, the state's highest court sentenced Petitioner in a manner not prescribed by state statute (claim 31); and (b) on remand from the United States Supreme Court, the state's highest court acted as an unreviewable sentencing panel when sentencing Petitioner (claim 32). (Filing 111, at 52–61.) I agree.

Judge Piester's opinion was predicated primarily upon *Rust v. Hopkins*, 984 F.2d 1486, 1493 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993). Affirming the district court, the court of appeals held in *Rust* that where the state district court sentencing panel was not aware of the correct burden of proof regarding aggravating and mitigating factors in a death penalty case, the Nebraska Supreme Court could not reweigh the evidence and impose the death sentence consistent with the Due Process Clause. The court specifically found that the petitioner had a state "statutory

right to: (1) have his trial judge or a three-judge panel including his trial judge ... sentence him ...; and (2) have the determination of that sentencing panel reviewed in the Nebraska Supreme Court." *Id.* Accordingly, when "Nebraska, without due process, deprived Rust of these [state-created] rights, it violated rights guaranteed him under the United States Constitution." *Id.*

The *Rust v. Hopkins* opinion was based upon *Hicks v. Oklahoma,* 447 U.S. 343, 345–47, 100 S.Ct. 2227, 2229–30, 65 L.Ed.2d 175 (1980). *Rust v. Hopkins,* 984 F.2d at 1493. In *Hicks,* the Supreme Court held that despite the fact that the Oklahoma Court of Criminal Appeals had the statutory power to revise judgments on appeal, the criminal appeals court deprived the petitioner of his state-created liberty interest in being sentenced by a jury, thereby violating the petitioner's federal constitutional rights under the Fourteenth Amendment's Due Process Clause. This violation took place when the state appellate court affirmed the petitioner's jury-imposed sentence although the sentence was based upon invalid provisions of the habitual offender law. In that case, the state appellate court believed the sentence was within the range of punishment that could

---

11. Petitioner and Respondent do not object to Judge Piester's recommendation that the court should not reach certain claims in light of the recommendation regarding resentencing because those claims are not likely to recur at resentencing (claims 5, 6, 26, 27, 34, 36, and 38). (*Compare* Filings 114 & 116 *with* Filing 111, at 61–62.) I specifically make this point because when the State of Nebraska has complained in the past, the court of appeals has been concerned when this court failed to address all the issues in death penalty cases. *Rust v. Clarke,* 960 F.2d 72, 73–74 (8th Cir.1992). *But compare Rust v. Hopkins,* 984 F.2d 1486, 1495–96 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993) (where resentencing would likely ensure that ineffective assistance of counsel would not recur at resentencing, the appellate court would not reach the issue); *Holtan v. Black,* 838 F.2d 984, 986 & n. 3 (8th Cir.1988) (where resentencing might obviate the issue regarding the constitutionality of a Nebraska statute, the appellate court would not reach the issue). Since neither Petitioner nor Respondent has objected to Judge Piester's recommendation in this regard, I am persuaded that both parties have waived or abandoned any objection they might have had concerning this issue. Nevertheless, in light of *Rust v. Clarke,* I have care-

fully considered Judge Piester's recommendation respecting these claims and find it entirely sound and consistent with the law, as I understand it, in this circuit. This court should not reach claims 5 and 6 (challenging the constitutionality of various provisions of Nebraska law regarding aggravating circumstances) because to do so would violate the admonition in *Holtan* about deciding the constitutionality of state statutes when one can avoid the issue as a result of resentencing. Regarding claims 26, 27, 34, 36, and 38 (regarding procedural sentencing errors before the Nebraska Supreme Court in *Reeves III* ), I note that Nebraska no longer follows *Reeves III* and will not engage in appellate resentencing. *State v. Moore,* 243 Neb. 679, 683, 502 N.W.2d 227, 230 (1993) (although disagreeing with *Rust v. Hopkins* and maintaining *Reeves III* was correctly decided, the Nebraska Supreme Court has stated that it is "futile for us to proceed with the resentencing" in light of *Rust v. Hopkins* ). Moreover, since errors of a procedural nature taking place during appellate resentencing will probably not be duplicated if resentencing takes place before a panel of state district judges, the court should avoid these issues as well, consistent with the admonition in *Rust v. Hopkins.*

have been imposed in any event and, thus, there was no reason to remand for sentencing. But the Supreme Court concluded that the state-created liberty interest in jury sentencing "is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." *Id.* at 346, 100 S.Ct. at 2229. Accordingly, the Court believed that the jury-sentencing entitlement could not be taken from the petitioner on the conjecture that the jury might have imposed an equally harsh sentence even absent the invalid statute. *Id.*

I turn next to Respondent's objection to Judge Piester's ruling on these claims. In essence, Respondent makes three arguments: (1) *Rust v. Hopkins* was improperly decided; (2) the portion of *Rust v. Hopkins* that Judge Piester relied upon was dicta; and (3) *Rust v. Hopkins* is distinguishable. I shall consider each of these three arguments separately.

**A.**

Respondent first argues that *Clemons,* when read with *Parker v. Dugger,* was properly construed by the Nebraska Supreme Court in *Reeves III; Rust v. Hopkins* was therefore wrongly decided; and, accordingly, I should not follow it. I disagree with this argument for two reasons: (1) the Nebraska Supreme Court wrongly read *Clemons* (and its progeny) to mean that if federal law allowed appellate resentencing, state law also allowed appellate resentencing; and (2) even if *Rust v. Hopkins* was wrongly decided, a

proposition with which I vigorously disagree, I am nevertheless bound by that decision.

**1.**

The Nebraska Supreme Court assumed that if federal law allowed appellate reweighing (resentencing),[12] state law also allowed appellate resentencing. When the Nebraska Supreme court made this assumption, it created a state procedure that had not been authorized by the Nebraska Legislature. Even more disturbing, the *Reeves III* court created and implemented for the first time a sentencing procedure that directly conflicted with the provisions of Nebraska law and arbitrarily deprived Reeves of two important state-created rights: (a) the right to have a sentencing panel including his trial judge make the initial determination of the appropriateness of the death penalty by *properly* applying aggravating and mitigating factors and thereafter impose the death sentence, and (b) the right to have the decision of the sentencing panel "reviewed" but not supplanted by appellate resentencing. *Rust v. Hopkins,* 984 F.2d at 1493 ("While created by state law, these are not 'procedural right[s]' of exclusively state concern,' they are liberty interests protected by the Fourteenth Amendment." *See Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980).").

■■■ As Judge Piester pointed out, (Filing 111, at 57); as the Supreme Court made clear in *Clemons,* 494 U.S. at 747, 110 S.Ct. at 1447–48;[13] and as the United States

---

12. That the two words mean the same thing is evident from the brief Respondent submitted to Judge Piester: "On remand the Nebraska Supreme Court found that the trial court error found in *Reeves I* could not be properly deemed harmless and thus engaged in a de novo review of Reeves' penalty phase record and ultimately **resentenced** Reeves to death for both of the homicides here in question." (Resp't's Br. Addressing First Am.Pet. at 2 (emphasis in original).)

13. As the Supreme Court observed in *Clemons:*

Contrary to the situation in *Hicks,* the state court in this case, as it had in others, asserted its authority under Mississippi law to decide for itself whether the death sentence was to be affirmed even though one of the two aggravating circumstances on which the jury had relied should not have been, or was improperly,

presented to the jury.... We have no basis for disputing this interpretation of state law, which was considered by the court below to be distinct from its asserted authority to affirm the sentence on the ground of harmless error, and which plainly means that we must reject Clemons' assertion that he had an unqualified liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances on which it had been instructed. In this respect, the case is analogous to *Cabana v. Bullock* [474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704] (1986) ... where we specifically rejected a due process challenge based on *Hicks because state law created no entitlement to have a jury make findings that an appellate court also could make.*
*Clemons,* 494 U.S. at 747, 110 S.Ct. at 1447 (emphasis added).

Court of Appeals for the Eighth Circuit specifically stated in *Rust v. Hopkins*, 984 F.2d at 1494,[14] while *Clemons* does allow appellate resentencing *under federal law* in various circumstances, such a procedure may take place only if *state law* allows this novel undertaking as well.[15] If, on the other hand, state law does not allow appellate reweighing, and instead provides a distinct two-tier sentencing procedure, the appellate court cannot, consistent with the Due Process Clause of the Fourteenth Amendment, deny the petitioner his state rights to a two-tier sentencing proceeding if the error is not harmless. *Rust v. Hopkins*, 984 F.2d at 1493. Since the error in this case was obviously not harmless beyond a reasonable doubt,[16] it is clear that the Nebraska Supreme Court denied Reeves his due process rights when it resentenced him on appeal,

thereby depriving him of at least two very significant state-created liberty interests.

That state law did not contemplate, and in fact prohibited, what the Nebraska Supreme Court did in *Reeves III* is made clear in three ways: (1) by a plain reading of the Nebraska statutes; (2) by a recognition that the opinion in *Reeves III* made no mention of the court's authority under state law to resentence; and (3) by an examination of the Nebraska Supreme Court's prior and subsequent decisions in somewhat similar cases where the court also failed to articulate a state law basis for appellate resentencing. I turn to those points next.

**a.**

Nebraska statutes clearly create a two-tier sentencing process. Moreover, the Nebraska statutes differentiate the roles to be per-

---

**14.** As the court observed in *Rust v. Hopkins:*

[T]he *Clemons* petitioner had no state law created entitlement, and furthermore, state law specifically authorized the procedure employed by the appellate court. In contrast, Rust has such an entitlement; namely, a right to be sentenced under the proper standard by the sentencing panel. Therefore, his situation is not analogous to *Clemons*, but more closely resembles *Hicks*. When such a state-created liberty interest is taken away in sentencing, the violation is far more serious than that alleged in *Clemons* when no state law entitlement was jeopardized, and the appellate "cure" was authorized by state law.

984 F.2d at 1494.

**15.** In this connection, it is useful to remember what the Mississippi Supreme Court recognized upon remand from the United States Supreme Court in *Clemons*. *Clemons v. State*, 593 So.2d 1004, 1007 (1992). In that case, the Mississippi Supreme Court determined that it did *not* have the authority under state law to reweigh or resentence and thus remanded for resentencing, finding that it could not conclude that the error was harmless beyond a reasonable doubt. *Id.*

Moreover, nothing in *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), even vaguely suggests that a state court may reweigh or resentence in violation of state law, thereby depriving a petitioner of a state-created liberty interest in violation of the Due Process Clause of the Fourteenth Amendment. *Dugger* stands solely for the proposition that if state law permits appellate resentencing (reweighing), the resentencing (reweighing) at the appellate level must be individualized and based upon the defendant's actual record. In fact, the Supreme Court found in *Dugger* that the Florida Supreme Court "does not reweigh the evidence of aggra-

vating and mitigating circumstances." *Id.* at 319, 111 S.Ct. at 738 (citations omitted).

**16.** I certainly agree with the Nebraska Supreme Court that the error in this case was not harmless beyond a reasonable doubt. To the extent that I am required to make a similar analysis, *see Williams v. Clarke*, 40 F.3d 1529, 1538–41 (8th Cir.1994), I independently find and conclude that the error was not harmless beyond a reasonable doubt. Reeves obviously did not appreciate the wrongfulness of his conduct in the same sense that many (and perhaps most) murderers do. Without question, he was entitled to the statutory mitigating factor set forth in Neb.Rev.Stat. § 29–2523(2)(g). The evidence indicates that Reeves is not, and has not been, a violent person by history or character. The evidence further reveals remorse on his part. The evidence also reveals a sort of drug-induced amnesia, although Reeves certainly took partial responsibility for the killings when he admitted stabbing and attempting to rape Mesner. I think it quite possible, even likely, that upon remand to a sentencing panel which calmly reviews the evidence anew, such a sentencing panel would conclude that the mitigating evidence "approach[s] or exceed[s] the weight given to the aggravating circumstances." Neb.Rev.Stat. § 29–2522(2). In this connection, I am especially cognizant of the fact the under Nebraska law the mitigating factors must only "approach" the weight given the aggravating circumstances in order for Reeves to avoid the death penalty; "[t]hey need not 'outweigh' the aggravating circumstances." *State v. Stewart*, 197 Neb. 497, 526, 250 N.W.2d 849, 866 (1977), *cert. denied sub nom. Abdullah v. Nebraska*, —— U.S. ——, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993), *overruled in nonrelevant part on other grounds, State v. Palmer*, 224 Neb. 282, 314–15, 399 N.W.2d 706, 728–29 (1986).

formed by the state district court sentencing panel and the Nebraska Supreme Court. And, most importantly, the Nebraska statutes simply do not give the Nebraska Supreme Court the authority to resentence once it has found that the sentencing panel engaged in harmful error in its weighing of aggravating and mitigating circumstances. Rather, state law makes clear that it is the sentencing panel that must "sentence," not the appellate court, and when Petitioner was deprived of this state-created right in *Reeves III*, his federal due process rights were violated.

First, the Nebraska statutes go to great lengths to set out how the sentencing hearing will be conducted by the district court sentencing panel, even requiring the sentencing panel to "set forth the general order of procedure at the outset of the sentence determination proceeding." Neb.Rev.Stat. § 29–2521 (Reissue 1989). After such proceedings have been completed, the sentencing panel is required to issue a written determination, including findings of fact, "based upon the records of the trial and the sentencing proceeding. . . ." Neb.Rev.Stat. § 29–2522 (Reissue 1989). There is no similar provision in the Nebraska statutes pertaining to the Nebraska Supreme Court and, hence, absolutely no reason to think that the Nebraska Legislature authorized or intended to authorize the Nebraska Supreme Court to perform the same function as the sentencing panel.

Second, Nebraska statutes provide only two remedies where the Nebraska Supreme Court disagrees with the sentencing panel on aggravating and mitigating circumstances: (a) the Nebraska Supreme Court may "reduce" the sentence, Neb.Rev.Stat. § 29–2521.03 (Reissue 1989); or (b) it may remand for a "new trial" (sentencing proceeding). Neb.Rev.Stat. § 29–2528 (Reissue 1989).

If the Nebraska Supreme Court disagrees with the sentencing panel regarding aggravating and mitigating circumstances, "[t]he Supreme Court may *reduce* any sentence which it finds not to be consistent with sections . . . 29–2522 [which requires the sentencing panel to, among other things, weigh the statutory aggravating and mitigating circum-

stances]. . . ." Neb.Rev.Stat. § 29–2521.03 (emphasis added).

If the Nebraska Supreme Court chooses not to reduce the sentence pursuant to Neb. Rev.Stat. § 29–2521.03 under such circumstances, there is no authorization in the Nebraska statutes for the court to "reweigh" the aggravating and mitigating circumstances for purposes of resentencing. Indeed, aside from the ability to "reduce" a death penalty sentence because it does not comply with the Nebraska statute that requires the district court sentencing panel to weigh aggravating and mitigating circumstances, Neb.Rev.Stat. § 29–2521.03, the Nebraska Supreme Court is limited to three orders, none of which allow resentencing through reweighing by the Nebraska Supreme Court:

**Death penalty cases; Supreme Court; orders.** In all cases *when the death penalty has been imposed by the district court*, the Supreme Court shall, after consideration of the appeal, order the prisoner to be discharged, a new trial to be had, or appoint a day certain for the execution of the sentence.

Neb.Rev.Stat. § 29–2528 (emphasis added).

Since the Nebraska Legislature went to the trouble to be quite explicit about the remedies given the Nebraska Supreme Court in the event of nonharmless error regarding aggravating/mitigating circumstances (reduction of sentence or remand for a new hearing), the Nebraska statutes cannot properly be construed to provide a remedy that is not explicitly mentioned in those statutes.

Third, the Nebraska statutes give the "weighing" function only to the district court sentencing panel. Neb.Rev.Stat. § 29–2522. In contrast, the statutes direct the Nebraska Supreme Court to "review and analyze" the actions of the sentencing panel. Neb.Rev. Stat. §§ 29–2521.01(5) & 29–2521.02 (Reissue 1989).

The only place in the Nebraska statutes where any court is directed by the Nebraska Legislature to "weigh" aggravating and mitigating circumstances is Neb.Rev.Stat. § 29–2522, where "the *judge or judges*" are directed to "fix the sentence at either death or life

imprisonment" after determining, among other things, "[w]hether sufficient mitigating circumstances exist which approach or exceed *the weight* given to the aggravating circumstances...." *Id.* (emphasis added).

In this regard, I observe that the phrase "judge or judges" as used in the foregoing statute can only mean the state district court sentencing panel which must, pursuant to Neb.Rev.Stat. § 29–2520 (Reissue 1989), consist of the trial judge or the trial judge plus two other judges (or in the case of disability or disqualification of the trial judge, three other state district judges). The Nebraska statutes consistently use the words "Supreme Court" when referring to the Nebraska Supreme Court. *See, e.g.,* Neb.Rev.Stat. §§ 29–2521.01(5), 29–2521.02, 29–2521.03, 29–2521.04 (Reissue 1989). Thus, the difference in the statutory language, i.e., "judge or judges" versus "Supreme Court," makes it clear that the words "judge or judges" in section 29–2522 refer to the sentencing panel and not the Nebraska Supreme Court.

On the other hand, when the Nebraska Legislature defined the task of the Nebraska Supreme Court regarding aggravating and mitigating circumstances, the legislature limited the function of that court. The Nebraska Legislature did not direct the Nebraska Supreme Court to "weigh" or "reweigh" aggravating and mitigating circumstances; rather, the legislature directed the court to "review and analyze," among other things, "the facts including mitigating and aggravating circumstances...." Neb.Rev.Stat. § 29–2521.02. *See also* Neb.Rev.Stat. § 29–2521.01(5).

Therefore, the allocation of the "weighing" function to the "judge or judges" and the "review-and-analysis" function to the Nebraska Supreme Court is plainly inconsistent

with the concept of appellate resentencing announced in *Reeves III.*

Finally, the only place where the Nebraska Legislature has authorized any court to impose a death sentence is in Neb.Rev.Stat. § 29–2520. That statute makes it clear that only a *district* court may impose the death penalty: "Whenever any person is found guilty of [first-degree murder], the *district* court shall within seven days fix a date for hearing *on determination of the sentence to be imposed.* Such determination *shall* be made by [the trial judge or a panel of judges, one of whom must be the trial judge (except in the case of disability or disqualification)]." *Id.* (emphasis added).

In summary, the Nebraska statutes [17] plainly do not permit appellate resentencing when there is nonharmless error regarding aggravating/mitigating circumstances because (1) the Nebraska statutes provide a very specific procedure for sentencing before the sentencing panel, but no such procedure is provided for the appellate court; (2) the Nebraska statues explicitly provide that the Nebraska Supreme Court's remedial powers in the event of nonharmless error regarding aggravating/mitigating circumstances are limited to "reduction" of sentence or to ordering a new sentencing hearing; (3) the "weighing" function is explicitly given to the state district court sentencing panel, and the "review-and-analysis" function is allocated to the Nebraska Supreme Court; and (4) the only court authorized to impose a death sentence is the district court, not the Nebraska Supreme Court.

**b.**

The second reason I am persuaded that Nebraska law does not allow appellate resentencing is that *Reeves III* is silent on the matter.[18] Nowhere in *Reeves III* does the

---

**17.** The Nebraska Constitution also does not give jurisdiction to the Nebraska Supreme Court to impose a sentence in a criminal case; rather, the state district courts are specifically given that right and responsibility. *Compare* Neb. Const. art. V, § 2 *with* art. V, § 9, *reprinted in* 2 Neb. Rev.Stat. (Reissue 1989 & Cum.Supp.1994).

**18.** When state-created liberty interests are at stake, the Supreme Court has "quite properly assert[ed] special control over substantive conclusions of state law in order to ensure effective

implementation of ... the due process clause." 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, *Federal Practice and Procedure* § 4030, at 754 (1977). In fact, "[c]ases arising under the due process protection of interests in 'liberty' and 'property' provide the richest examples of special need for the Supreme Court to protect rights created by state law." *Id.* at 758. This is a particular prerogative of federal law when liberty interests protected by the Fourteenth Amendment are at stake: "The prob-

Nebraska Supreme Court explicitly confront the question of whether Nebraska law allows appellate resentencing. Nowhere does the Nebraska Supreme Court explain under what state grant of authority the court believed itself empowered to engage in appellate resentencing. Nowhere does the Nebraska Supreme Court explain by reference to the Nebraska death penalty laws how the court derived the power to engage in appellate resentencing, thereby depriving Reeves of his statutory entitlement to sentencing by the district court sentencing panel.

The Nebraska Supreme Court simply assumed it had the power to engage in appellate resentencing when confronted with non-harmless error regarding aggravating/mitigating circumstances. Indeed, the *Reeves III* opinion cited federal law alone for its assumption that the Nebraska Supreme Court has the authority to resentence when it confronts nonharmless error regarding aggravating/mitigating circumstances.

The court, citing only *Clemons v. Mississippi* and *Parker v. Dugger*, relied exclusively upon federal law, and not state law, for the authority to adopt and implement what it understood to be the "*Clemons* rule," stating:

> when an appellate court invalidates one or more of the aggravating circumstances, or finds as a matter of law that any mitigating circumstance exists not considered by

the sentencing panel in its balancing, the appellate court may, *consistent with the U.S. Constitution,* reweigh the remaining circumstances or conduct harmless error analysis.

*Reeves III,* 239 Neb. at 426–27, 476 N.W.2d at 836 (emphasis added).

It is true that the *Reeves III* opinion contains a discussion regarding prior decisions of the Nebraska Supreme Court issued subsequent to *Clemons. Reeves III,* 239 Neb. at 425–26, 476 N.W.2d at 835. But nowhere in that discussion does the Nebraska Supreme Court explain the source of its power under state law to engage in appellate resentencing. The opinion merely recites what the Nebraska Supreme Court did in the past, without any attempt to articulate the state law basis for such action. And, as will be seen later, the Nebraska Supreme Court decisions both before and after *Reeves III* fail to explain the source of this supposed power as well.

### c.

The Nebraska Supreme Court decisions both before and after *Reeves III* also fail to establish the state law authority of the court to engage in appellate resentencing and thereby deprive a petitioner, such as Reeves, of the benefit of the statutory two-tier process—district court sentencing followed by independent appellate review.[19]

---

lem of defining the liberty interests protected by due process, in contrast to property interests, has traditionally been approached as a matter of federal law." *Id.* at 760 (footnote omitted). As a result, "[b]roader review" of the validity of a state court's determination of state law is entirely appropriate where, as when the Due Process Clause of the Fourteenth Amendment is implicated, "a specific provision of federal law ... is deliberately aimed at protecting rights initially created by state law." *Id.* § 4029, at 751 (footnote omitted). Consequently, in this type of case, where life literally hangs in the balance, this court is required to undertake a searching analysis of the adequacy of the *Reeves III* decision as it regards a state-created liberty interest alleged to have been denied without due process of law under the Fourteenth Amendment. As the Court succinctly put it in *Hicks,* a case very similar to *Reeves III,* the state-created right is not "merely a matter of state procedural law." *Hicks,* 447 U.S. at 346, 100 S.Ct. at 2229.

**19.** Two-tier sentencing schemes substantially reduce the chance of the erroneous imposition of

the death penalty, and have been a crucial factor in the Supreme Court's upholding of death penalty statutes. As the court of appeals observed in *Rust v. Hopkins:* "The whole point of the two-tier sentencing procedure is that the initial determination is reviewed by an independent appellate court. The two-tier process would be subverted if the Nebraska Supreme Court could step in and fully perform the work of the sentencing panel." 984 F.2d at 1493. The subversion of this two-tier process has constitutional implications: "The existence of independent (and often automatic) appellate review has been a crucial factor in the Supreme Court's upholding the constitutionality of state capital punishment schemes. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 198 [96 S.Ct. 2909, 2936–37, 49 L.Ed.2d 859] ... (1976); *Profitt [v. Florida],* 428 U.S. [242, 253, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976)]." *Id.* One of the dangers of the approach taken by the Nebraska Supreme Court is that Nebraska sentencing panels are in effect encouraged to be less than careful. Assume, for example, that a state sentencing panel ignored the state statutory directive to carefully consider

*Reeves III* cites two prior cases where the court engaged in some type of reweighing. *Reeves III*, 239 Neb. at 425–26, 476 N.W.2d at 835 (discussing *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990), and *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991)). However, upon examining those cases, one finds that the Nebraska Supreme Court failed to articulate the state law basis for appellate resentencing in those cases just as it failed to articulate the state law basis for appellate resentencing in *Reeves III*. *See State v. Victor*, 235 Neb. at 794–95, 457 N.W.2d at 447; *State v. Otey*, 236 Neb. at 926–28, 464 N.W.2d at 360–61. Indeed, aside from a citation to *Victor*, the only authority claimed by the Nebraska Supreme Court for appellate resentencing in *State v. Otey* was a citation to *Clemons*. *Id.*

Subsequent to *Reeves III*, the Nebraska Supreme Court announced it would no longer engage in appellate resentencing as a result of the Eighth Circuit decision in *Rust v. Hopkins*. *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993). While asserting that "we have the authority to resentence by analyzing and reweighing the aggravating and mitigating factors of the case," *id.*, 243 Neb. at 681, 502 N.W.2d at 229, the Nebraska Supreme Court stated in *Moore* that it would no longer do so in light of *Rust v. Hopkins*. The court made it clear that it disagreed with *Rust v. Hopkins*, but also recognized that it would be a waste of judicial resources to proceed with appellate resentencing in light of the holding in *Rust* because "the federal court would likely reverse." *Id.*, 243 Neb. at 683, 502 N.W.2d at 230.

The only basis for the opinion expressed in *Moore* that the Nebraska Supreme Court had the authority under state law to engage in appellate resentencing was a citation to

*Reeves III. Id.*, 243 Neb. at 681, 502 N.W.2d at 228–29. And, as noted earlier, the only basis for appellate resentencing in *Reeves III* was the Supreme Court's opinion in *Clemons*. Accordingly, *Moore* is no more illuminating than the earlier opinions of the Nebraska Supreme Court on the state law basis for appellate resentencing.

I am thus convinced that none of the opinions of the Nebraska Supreme Court have articulated a state law basis for appellate resentencing.

2.

■ To the extent that Respondent argues I should not follow *Rust v. Hopkins* because it was wrongly decided, I emphatically reject that argument. Even if I assume that *Rust* was wrongly decided, I am nevertheless bound by the *Rust* decision. *See, e.g., United States ex rel. Shore v. O'Leary*, 833 F.2d 663, 667 (7th Cir.1987) ("One foundation block of our judicial system is the principle of *stare decisis*, which demands adherence to precedents. . . . A lower court owes deference to those above it; ordinarily it has no authority to reject a doctrine developed by a higher court.") (citations omitted); *Dronenburg v. Zech*, 741 F.2d 1388, 1396 n. 5 (D.C.Cir.1984) (Bork, J.); *Hillhouse v. Harris*, 547 F.Supp. 88, 92–93 (W.D.Ark.1982) (R. Arnold, J., then United States Circuit Judge, now Chief United States Circuit Judge, sitting by designation) (administrative agencies, just like federal district courts, must follow the decisions of higher courts), *aff'd*, 715 F.2d 428 (8th Cir.1983). Simply put, except in the most extraordinary circumstances (none of which exist here), as a judge of a lower federal court, I must fairly apply precedent even if I believe it wrong.

---

mitigating circumstances, and imposed the death penalty without careful attention to such factors. In such a case, if the appellate court "reweighed" and "resentenced" without remand, there would obviously be little or no incentive for state sentencing panels to be careful. This case presents a good example of the problem. The evidence in this case was overwhelming, as the Nebraska Supreme Court recognized in *Reeves I* and *Reeves III*, that Petitioner qualified for the "diminished capacity" mitigating circumstance due to the fact that he was grossly intoxicated by reason of consumption of alcohol and peyote.

Leaving his billfold with identifying information in it at the scene of the crime, and shortly thereafter wandering across a main street in plain view of the police, while covered with blood and with his penis exposed, is dramatic evidence that Reeves was entitled to the "diminished capacity" mitigating factor. Accordingly, Reeves was denied a proper sentencing panel decision about whether his life should be spared, considering this statutory mitigating factor. If appellate resentencing is permissible, what incentive does a sentencing panel have to correctly apply the law?

### B.

Respondent next argues that the language relied upon by Judge Piester in *Rust v. Hopkins* was dicta.[20] I disagree.[21]

Respondent argues that because the sentencing panel in *Rust* was unaware of the appropriate standard of proof, and the Nebraska Supreme Court "attempted to re-evaluate the entire penalty phase record under a **standard of proof** different than that anticipated by all parties before the state trial court," *Rust* did not present the "appellate remedy at issue here." (Br. Supp. Objection Magistrate Judge's Report & Recommendation at 9.) Accordingly, Respondent now argues that the language in *Rust* relied upon by Judge Piester was dicta since the Eighth Circuit could have decided the issue in *Rust* only on the question of the adequacy of the burden-of-proof issue.

I am not persuaded by this argument because (1) Respondent raised the issue on appeal as a reason to reverse the district court and, therefore, the issue was necessarily resolved by the court of appeals; and (2) the issue of appellate sentencing was separately decided by the district court and, therefore, the issue was necessarily resolved by the court of appeals.

First, it was Respondent, on appeal in *Rust*, who argued the applicability of *Clemons*, asserting that the decision of the sentencing panel would have been the same, thus obviating the need for remand to the panel, and that the Nebraska Supreme Court had the right to "cure" the problem by reweighing or harmless-error analysis:

> The warden argues that the Nebraska Supreme Court simply cured any uncertainty over the standard of proof applied in Rust's case by means of a reweighing or a harmless error analysis as permitted under *Clemons v. Mississippi*. . . . *Clemons* is inapplicable and we affirm the district court.
>
> . . . .
>
> The second facet of the constitutional violation here is the deprivation of any meaningful appellate review. . . . The Nebraska Supreme Court did not merely "review" the determinations of the sentencing panel, it effectively resentenced Rust under a standard it had created that very same day. . . . Thus, the deprivation of meaningful appellate review is an independent violation of Rust's constitutional rights. . . .
>
> Contrary to the warden's arguments, we believe that *Clemons* does not apply here.
>
> Therefore, the *Clemons* petitioner had no state law created entitlement, and furthermore, state law specifically authorized the procedure employed by the appellate court. In contrast, Rust has such an entitlement. . . .

*Rust v. Hopkins,* 984 F.2d at 1492–94.

As a consequence, the court of appeals in *Rust* was compelled to reach the "appellate sentencing" issue because of the position taken by Respondent that the sentencing panel error did not matter and was cured in the Nebraska Supreme Court by, among other things, appellate resentencing.

Second, apart from the position taken by Respondent on appeal, it was necessary to reach the appellate sentencing issue because of the decision of the federal district court below. As the court of appeals recognized, this issue was squarely and separately decided by the district court:

> The second issue is whether the proceedings in the Nebraska Supreme Court

---

20. "Dicta," or "obiter dictum," is normally thought to be a statement by a judge in an opinion that is unnecessary to the resolution of the case. Statements by judges in opinions which are "not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of an adjudication." *Black's Law Dictionary* at 540–41 (4th ed. rev. 1976).

21. In this connection, while still a magistrate judge, I wrote the report and recommendation on this issue that Judge Cambridge adopted in *Rust v. Hopkins.* Accordingly, I am intimately familiar with the case. There were two main substantive issues: (1) whether the sentencing panel's uncertainty as to the proper standard of proof necessary to establish aggravating circumstances required resentencing under the precedent of *Holtan v. Black,* 838 F.2d 984 (8th Cir. 1988); and (2) even if resentencing might otherwise be required by *Holtan,* whether the actions of the Nebraska Supreme Court obviated the need for resentencing by virtue of an appellate "cure."

were essentially an unreviewable resentencing in violation of Rust's constitutional rights....

The district court concluded that ... Rust was deprived of his state statutory right ... to have the Nebraska Supreme Court review that sentence. In effect, the Nebraska Supreme Court acted as an unreviewable sentencing panel when it made its findings that the aggravating factors had been proven beyond a reasonable doubt.

*Id.* at 1492.

The court of appeals could not simply ignore the appellate sentencing issue. The issue was separately decided by the district court and constituted independent grounds for issuance of the writ; therefore, the issue was necessarily resolved by the court of appeals.

### C.

Finally, Respondent argues that *Rust v. Hopkins* may be distinguished from this case. In so arguing, Respondent makes two subsidiary arguments. First, Respondent argues that language in one part of *Rust* actually supports the opinion of the Nebraska Supreme Court in *Reeves III*. Second, Respondent argues that what the *Rust* court was really concerned about was the standard-of-proof issue at the sentencing panel level, and this distinguishes *Rust*. Although I am not persuaded, I shall turn to those arguments now.

### 1.

It is true, as Respondent points out, that in *Rust v. Hopkins* the Eighth Circuit Court of Appeals recognized that:

an appellate court is fully competent to "cure" some sentencing deficiencies in capital cases. However, we think such appellate remedies are appropriate when the initial sentencing was tainted by relatively minor errors (such as the improper consideration of an invalid aggravating circumstance). We do not believe that *Clemons* or any other decision on this issue supports the proposition that an appellate court can provide an adequate "cure" when

the entire first tier of the sentencing process was invalid.

*Id.* at 1493.

However, I fail to understand how the above-quoted passage either helps Respondent or distinguishes this case from *Rust v. Hopkins.*

While this case does not involve the burden-of-proof issue present in *Rust,* it is nevertheless true that the error committed by the sentencing panel in this case in not properly considering the overwhelming evidence of diminished capacity was *harmful* error, as explicitly found by the Nebraska Supreme Court in *Reeves III.*[22] Thus, just as in *Rust,* the "entire first tier of the sentencing process was invalid" in this case. *Id.*

Moreover, the quoted passage from *Rust* simply states what I observed earlier, i.e., that appellate resentencing may be authorized consistent with the Constitution so long as such appellate resentencing does not deprive a petitioner of a state-created liberty interest. In this case, however, Reeves was denied two state-created liberty interests without due process of law in violation of the Fourteenth Amendment: (1) the state-created entitlement to be sentenced by a sentencing panel that does not commit *harmful* error; and (2) the state-created right to have that sentenced reviewed, not supplanted, by the Nebraska Supreme Court.

### 2.

Respondent also argues that the *Rust* court was concerned that the "improper standard of proof infected all of the sentencing panel's findings." *Id.* at 1495. This argument, while true, presents a distinction without a meaningful difference.

As I observed earlier, the entire first tier of the sentencing process in this case was tainted, just as it was in *Rust.* The sentencing panel decision in this case was infected not by the burden-of-proof error, but by the panel's crucial error, found presumptively harmful by the Supreme Court of Nebraska, in failing to properly grant Reeves a mitigat-

---

**22.** Indeed, as Judge Piester observed, "[t]he Nebraska Supreme Court in *Reeves III* went even further than did the state court in *Rust,* striking one aggravating factor with respect to Victoria

Lamm and finding the existence of a mitigating factor in both Lamm's and Janet Mesner's death." (Filing 111, at 58) (footnote omitted).

ing circumstance by reason of reduced capacity and then failing to weigh that mitigating circumstance against aggravating factors. Such error goes to the very heart of the "weighing" process that is integral to constitutional sentencing and is designed to provide the individualized sentencing required by numerous decisions of the Supreme Court. Moreover, in the Lamm killing, the sentencing panel wrongfully applied an aggravating circumstance.

Even granting Respondent the point of his argument—that the burden-of-proof issue was not present in this case—such a distinction hardly differentiates this case from *Rust* in a meaningful manner. Significant error (no matter how characterized) occurred before the sentencing panel, and the Nebraska Supreme Court acted as an unreviewable sentencing panel by resentencing Reeves after finding that such sentencing panel error was not harmless beyond a reasonable doubt. This resentencing clearly violated state law that granted Reeves a *proper* sentencing proceeding before the district court and review, not resentencing, before the Nebraska Supreme Court. Thus, precisely the same situation is presented in this case as was presented in *Rust,* even though it is true that the burden-of-proof issue is not involved in this case.

### D.

In summary, I find and conclude the following:

1. That the Nebraska Supreme Court violated Petitioner's constitutional right to due process of law, entitling Petitioner to resentencing, because (a) on remand from the United States Supreme Court, the state's highest court sentenced Petitioner in a manner not prescribed by state statute (claim 31); and (b) on remand from the United States Supreme Court, the state's highest court acted as an unreviewable sentencing panel in violation of state law when sentencing Petitioner (claim 32). (Filing 111, at 52–61).

2. That Nebraska law did not contemplate, and in fact prohibited, what the Nebraska Supreme Court did in *Reeves III* is evident (a) by a plain reading of the Ne-

braska statutes; (b) by a recognition that the opinion in *Reeves III* made no mention of the court's authority under state law to resentence; and (c) by an examination of the Nebraska Supreme Court's prior and subsequent decisions in somewhat similar cases where the court also failed to articulate a state-law basis for appellate resentencing.

3. That as Judge Piester pointed out, (Filing 111, at 57); as the Supreme Court made clear in *Clemons,* 494 U.S. at 747, 110 S.Ct. at 1447–48; and as the United States Court of Appeals for the Eighth Circuit specifically stated in *Rust v. Hopkins,* 984 F.2d at 1494, while *Clemons* does allow appellate resentencing *under federal law* in various circumstances, such a procedure may take place only if *state law* allows this novel undertaking as well.

4. That if, on the other hand, state law does not allow appellate reweighing and instead provides a distinct two-tier sentencing procedure, the appellate court cannot, consistent with the Due Process Clause of the Fourteenth Amendment, arbitrarily deny the petitioner his state rights to a two-tier sentencing proceeding if the error is not harmless. *Rust v. Hopkins,* 984 F.2d at 1493.

5. That since the error in this case was obviously not harmless beyond a reasonable doubt, it is clear that the Nebraska Supreme Court arbitrarily denied Reeves his due process rights when it resentenced him on appeal in violation of state law, thereby depriving him of at least two very significant state-created liberty interests.

6. That (a) the decision in *Rust v. Hopkins* was not wrongly decided; (b) even if it was wrongly decided, this court is bound to follow it; (c) the pertinent language of the decision is not dicta; and (d) the case is not fairly distinguishable from this one.

### III.

I turn next to the objections to Judge Piester's report and recommendation raised by Petitioner (Filing 116). After de novo review, I find none of Petitioner's objections persuasive. I shall briefly address the primary objections asserted in Petitioner's brief,

although I have reviewed, and found wanting, the remainder of Petitioner's arguments.

**A.**

 Petitioner argues that Judge Piester erred when he found that claim 20(a) and claim 21 were without merit. (Filing 111, at 37–39.) These claims related to an alleged "burden-shifting" instruction.

The jury in this case was instructed as follows regarding the intent necessary to find that a person had committed the crime of sexual assault or attempted sexual assault:

INSTRUCTION NO. _9_

The intent with which an act is done is a necessary element of the crimes of:

(a) Sexual assault in the first degree;

(b) Attempted sexual assault in the first degree; and must be established by the evidence the same as any other material element beyond a reasonable doubt.

Intent is a mental process, and it therefore generally remains hidden within the mind where it is conceived. It is rarely if ever susceptible of proof by direct evidence. It may, however, be inferred from the words and acts of the defendant and circumstances surrounding his conduct. But before that intent can be inferred from such circumstantial evidence alone, it must be of such character as to exclude every reasonable conclusion except that defendant had the required intent. It is for you to determine from all the facts and circumstances in evidence whether or not the defendant committed the acts complained of and whether at such time he had the criminal intent required by Instructions Numbers 2, 5, 8, 12, 14. If you have any reasonable doubt with respect to either, you must find the defendant not guilty.

(Filing 71, at 251 (Clerk's Tr. Instruction 9).)

The jury was also instructed as to how the felony murder rule applied in this case in terms of intent:

INSTRUCTION NO. _10_

You are instructed that in a prosecution for homicide in the perpetration of or attempt to perpetrate a sexual assault in the first degree, as herein charged, proof of premeditation and deliberation or an intent to kill is not required.

The turpitude involved in the perpetration of or attempted perpetration of a sexual assault in the first degree takes the place of intent to kill or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intention required for perpetration of or attempt to perpetrate a sexual assault in the first degree.

A homicide committed while perpetrating or attempting to perpetrate a sexual assault in the first degree is murder in the first degree even though no intent to commit homicide is alleged or proven.

(*Id.* at 252 (Instruction 10).)

It is this instruction that Petitioner challenges.

The jury was also instructed on the defense of insanity as follows:

INSTRUCTION NO. _13_

The defendant contends that he was insane or mentally deranged at the time he is alleged to have committed the offenses charged in the Amended Information. Insanity is a defense recognized by law and the evidence relating thereto should be considered by you and weighed the same as any other evidence.

The burden is upon the State to establish the fact of defendant's sanity beyond a reasonable doubt.

If from all of the evidence you are convinced beyond a reasonable doubt that the defendant committed the act or acts charged and that at the time of the commission of the alleged crime he was of sufficient mental capacity:

1. To understand what he was doing and the nature and quality of his act;

2. To distinguish between right and wrong with respect to it; and

3. To know that such act was wrong and deserved punishment,

then the defendant would be legally responsible for his acts and you should return a verdict of "guilty", although you might find that at the time he was suffering from some degree of insanity or impairment of the mind.

If from the evidence or lack of evidence in this case a reasonable doubt is raised in your minds as to the defendant's mental capacity at the time of the commission of the alleged crime:

1. To understand what he was doing and the nature and quality of his act; or

2. To distinguish between right and wrong with respect to it; or

3. To know that such act was wrong and deserved punishment,

it is your duty to find the defendant "not guilty by reason of insanity".

(*Id.* at 255–56 (Instruction 13).)

Petitioner argues that the "conclusive presumption" language in Instruction 10 is an unconstitutional "burden-shifting" instruction under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (holding that a jury instruction which stated "the law presumes that a person intends the ordinary consequences of his voluntary acts" violated the Due Process Clause of the Fourteenth Amendment when used in a "deliberate" murder case because ·the jury could have believed that the instruction relieved the State of Montana of having to prove the intent element of the murder charge beyond a reasonable doubt and shifted the burden to the defendant to disprove intent). Petitioner also argues that even if the challenged instruction does not violate the *Sandstrom* rule, it so substantially undermined the insanity defense as to establish a constitutional violation.

As to Petitioner's first argument, *Sandstrom* "simply held that an instruction which creates a presumption of fact violates due process if it relieves the State of its burden of proving all of the elements of the offense charged beyond a reasonable doubt." *Gilmore v. Taylor,* —— U.S. ——, ——, 113 S.Ct. 2112, 2118, 124 L.Ed.2d 306 (1993). The instruction in this case does not violate *Sandstrom* because it did not create a pre-

sumption of *fact* and it did not relieve the State of proving an essential element of its case.

Sexual assault or attempted sexual assault was the crime charged as the underlying felony in this case, which in turn invoked the felony murder rule. The challenged instruction advised the jury only that if the State proved intent to commit sexual assault or attempted sexual assault beyond a reasonable doubt, then the State had proved all the intent necessary to invoke the provisions of the Nebraska felony murder rule. Thus, the "conclusive presumption" language in Instruction 10, while perhaps an unfortunate choice of words, is nothing more than a correct statement of what the Nebraska *law* of felony murder is all about. *See, e.g., Reeves II,* 234 Neb. at 752–53, 453 N.W.2d at 384–85. [23] Since the challenged instruction in no way shifted the burden of proof, did not create a presumption of fact, and did not relieve the State of proving an essential element of the crime charged, the *Sandstrom* case is simply not applicable here.

As to Petitioner's second argument that the challenged instruction relieved the State of Nebraska of its burden to prove that Reeves was sane or that the instruction somehow confused the jury about the insanity defense, I am similarly unpersuaded.

The jury was explicitly advised that the State had the burden of proving beyond a reasonable doubt *both* (1) that Petitioner had the intent to commit sexual assault/attempted sexual assault, and (2) that Petitioner was sane, that is, that he had the requisite mental capacity to formulate the intent to commit the underlying crime (sexual assault or attempted sexual assault).

Instruction 10, read in context with Instructions 9 and 13, merely informed the jury that if the State proved intent and sanity beyond a reasonable doubt, then the intent necessary to commit the underlying felony (sexual assault or attempted sexual assault)

**23.** Moreover, since Petitioner did the actual killings, there appears to be nothing constitutionally defective in the substitution of intent to commit the crime of sexual assault or attempted sexual assault for the intent necessary to commit murder. *See, e.g., Fairchild v. Norris,* 21 F.3d 799,

802–03 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 448, 130 L.Ed.2d 357 (1994) (discussing *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987)).

supplied all the intent required and the jury was obligated to apply the felony murder doctrine. I do not believe these instructions, read together, confused the jury about what the State was obligated to prove beyond a reasonable doubt or otherwise relieved the State of proving an essential element of its case.

Finally, I note that Petitioner chides Judge Piester for not addressing *Godfrey v. Kemp*, 836 F.2d 1557 (11th Cir.), *cert. dismissed sub nom. Zant v. Godfrey*, 487 U.S. 1264, 109 S.Ct. 27, 101 L.Ed.2d 977 (1988). Suffice it to say that *Godfrey* involves an instruction, like the one in *Sandstrom*, that shifted the burden of proof in a case, like the *Sandstrom* case, that did not involve the felony murder rule. Therefore, *Sandstrom*, *Godfrey*, and cases like them are simply not applicable because (1) there was no burden-shifting instruction in this case, and (2) this case involved the felony murder rule, whereas *Sandstrom* (and its progeny) involved deliberate murder. Thus, *Sandstrom* and similar cases involve entirely different issues of intent than are presented by this case.

### B.

■ Petitioner next complains about Judge Piester's resolution of claim 20(b). (Filing 111, at 40–41.) Petitioner argues that the state district court erred in not giving a lesser-included-offense instruction, thereby violating the rule announced in such cases as *Hopper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367 (1982), and *Beck v. Alabama*, 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980). Judge Piester concluded that since the state supreme court had held in *Reeves I* that under Nebraska law second-degree murder and manslaughter are not lesser-included offenses of felony murder, federal law did not require a lesser-included-offense instruction.

Judge Piester explicitly relied upon a Ninth Circuit case that was nearly on "all fours" with this case. In *Greenawalt v. Ricketts*, 943 F.2d 1020, 1029 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 252, 121 L.Ed.2d 184 (1992), the United States Court of Appeals for the Ninth Circuit held that where, as in Arizona, there is no lesser-included offense under state law for felony murder, *Beck* and similar cases do not require, and may not even permit, the giving of such an instruction.

In arriving at this conclusion, Judge Piester recognized that he was precluded from reviewing the decision of the Nebraska Supreme Court that felony murder has no lesser-included offense. He cited *Blair v. Armontrout*, 916 F.2d 1310, 1326–30 (8th Cir. 1990), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 89, 90, 116 L.Ed.2d 62 (1991) (rejecting the argument that the Missouri Supreme Court's rulings on first-degree murder as a lesser-included offense of capital murder were inconsistent), for the proposition that the federal courts may not review a state court's decision of state substantive law if the decision rests on an adequate foundation. Indeed, as that case points out, the United States Supreme Court has ruled that "a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977).

Petitioner now argues that the Nebraska Supreme Court's opinion in *Reeves I* was not based upon an adequate foundation and that Judge Piester should have reviewed the court's conclusion that under Nebraska law there are no lesser-included offenses for felony murder. I disagree with Petitioner.

Simply stated, the opinion of the *Reeves I* court rests upon an adequate foundation of substantive state law. *Reeves I*, 216 Neb. at 217, 344 N.W.2d at 442 (citing and quoting *State v. Hubbard*, 211 Neb. 531, 319 N.W.2d 116 (1982)). In *State v. Hubbard*, decided before *Reeves I*, the Nebraska Supreme Court carefully considered and decided that felony murder has no lesser-included offenses and that it is error to give such an instruction, even if requested. *Hubbard*, 211 Neb. at 533–34, 319 N.W.2d at 118.

Essentially, the Nebraska Supreme Court ruled that in terms of intent there is a fundamental difference between first-degree murder, second-degree murder or manslaughter viewed as one class of murder, and felony murder viewed as another class of murder,

and therefore, it would be improper to give a lesser-included-offense instruction that mixed the different concepts of intent. In reaching this conclusion, the Nebraska Supreme Court cited and analyzed various prior opinions of the court. *Hubbard,* 211 Neb. at 533–34, 319 N.W.2d at 118 (discussing *State v. McDonald,* 195 Neb. 625, 636–37, 240 N.W.2d 8, 15 (1976), and *State v. Bradley,* 210 Neb. 882, 885, 317 N.W.2d 99, 101–02 (1982)).

On one hand, the court observed that in a first-degree murder case, second-degree murder and manslaughter are subsumed as possible lesser-included offenses because all three offenses concentrate on the *intent required as to the killings.* On the other hand, in a felony murder case, second-degree murder and manslaughter are not subsumed as possible lesser-included offenses because felony murder concentrates on the *intent required to commit the underlying felony and not the intent required as to the killings.*

Accordingly, the Nebraska Supreme Court believed that it would improperly mix intent concepts to instruct that second-degree murder and manslaughter are lesser-included offenses of felony murder because felony murder focuses on one type of intent, i.e., intent to commit the act which constitutes the felony during which the killing occurred, while second-degree murder and manslaughter (as well as first-degree murder) focus on a fundamentally different type of intent, i.e., intent to kill.

While one can argue with this analysis, as the Ninth Circuit's opinion in *Greenawalt v. Ricketts* points out, other state courts have reached similar conclusions. Since the opinion of the Nebraska Supreme Court is founded upon a rational and thoughtful analysis of its own substantive law, there is no basis for a federal court to disregard the court's reasoned opinion as to its own law.

### C.

 Petitioner next objects to Judge Piester's conclusion that claim 20(c) was never fairly presented and, therefore, the claim was procedurally defaulted. (Filing 111, at 21.) Claim 20(c) essentially argued that Reeves was denied equal protection because state law denied him a lesser-included-offense instruction while someone charged with first-degree murder was entitled to such an instruction.

Petitioner seems to concede that the issue was not directly presented to the state courts, but he argues that (a) closely related issues were presented and, thus, claim 20(c) was "fairly" presented; and (b) the Nebraska Supreme Court had a duty to consider claim 20(c) because it was "plain error," even if the claim was not "fairly" presented.

I have carefully reviewed the citation to the various briefs wherein Petitioner now claims the issue was "fairly presented" to the Nebraska Supreme Court. I agree with Judge Piester that in none of those briefs did Petitioner either legally or factually give the Nebraska Supreme Court a fair opportunity to address *the equal protection claim.*[24] Moreover, given the fact that, as discussed above, state substantive law did not permit a lesser-included-offense instruction in a felony murder case and that such a conclusion is based upon an adequate foundation in state substantive law, the equal protection claim was manifestly not "plain error" that the Nebraska Supreme Court was required to observe on its own.

Finally, I find and conclude that this court's finding regarding claim 20(b) moots claim 20(c). If there is an adequate basis under state substantive law for distinguishing between first-degree murder, second-degree murder and manslaughter, viewed as one class, and felony murder, viewed as a separate class, for purposes of determining

---

**24.** While the equal protection issue may have been raised in an assignment of error in the brief given to the Nebraska Supreme Court in *Reeves I,* (Filing 71, Ex. 26, Appellant's Br. at 6 (assignment of error 18), it was *not* argued in that brief. (*Id.* at 83–92.) Under Nebraska Supreme Court rules, an assignment of error which is not briefed is abandoned. *State v. Evans,* 215 Neb. 433, 444, 338 N.W.2d 788, 795 (1983) ("Since consider-

ation of assignments of error is limited to those discussed in the brief, we do not address tendered instruction Nos. 2 and 3.") (citing Neb. Ct.R. 9 D(1)d (Rev.1982)). *See also Rules of the Supreme Court of the State of Nebraska,* Rule 9 D(1)(d) (Rev.1992) ("Each assignment of error shall be separately numbered and paragraphed, *bearing in mind that consideration of the case will be limited to errors assigned and discussed.").*

lesser-included offenses, Reeves cannot establish that he was "similarly situated" to those offenders who may have been entitled to a lesser-included-offense instruction because they were charged with nonfelony murder. Before the Equal Protection Clause is implicated, Reeves would be required to show that he was "similarly situated" to the members of one class, but treated differently from the members of that class. *See, e.g., Dobbert v. Florida,* 432 U.S. 282, 301, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977) (petitioner who challenged death sentence was not "similarly situated" to other defendants whose sentences were reduced to life in prison; thus, petitioner could not mount an equal protection challenge). Reeves obviously cannot make the required "similarly situated" showing if there is a rational distinction between felony murder as one class and nonfelony murder as a different class for purposes of lesser-included offenses.

### D.

■ Petitioner next argues that Judge Piester erred in his resolution of claim 22. (Filing 111, at 42–45.) Claim 22 asserted that it was constitutional error not to give a diminished capacity instruction. Judge Piester was not convinced on this argument because the trial court gave the insanity instruction discussed above, and also gave an instruction on "intoxication" which informed the jury that:

> Ordinarily, voluntary drug intoxication or voluntary alcohol intoxication or a combination thereof is not justification or excuse for crime; but excessive intoxication by which a person is wholly deprived of reason may prevent having the intent charged.

> If you find that the defendant was intoxicated, that fact should be considered by you, together with all the facts and circumstances in evidence, for the purpose of determining whether or not you have a reasonable doubt that defendant was at the time in question capable of having the intent charged in regard to the alleged perpetration of or attempt to perpetrate a sexual assault in the first degree.

(Filing 71, at 257 (Clerk's Tr. Instruction 14).)

As Judge Piester observed, in order for the failure to give an instruction to be error justifying federal habeas corpus relief, the error must amount to a miscarriage of justice. *Closs v. Leapley,* 18 F.3d 574, 579 (8th Cir.1994). I agree with Judge Piester that Reeves has failed to establish that the alleged error in not giving the diminished capacity instruction amounted to a miscarriage of justice.

It is true that "diminished capacity" was the essential thrust of Reeves' defense. But the "diminished capacity" that formed the basis of his defense was in turn primarily founded upon intoxication-induced diminishment of mental capacity. The intoxication instruction served to directly address Reeves' defense, and properly directed the jury that it must *not* have a reasonable doubt about the issue of intent after considering intoxication and related evidence. Therefore, I am entirely satisfied that no miscarriage of justice occurred when the trial judge refused the diminished capacity instruction.

### E.

■ Reeves complains further that Judge Piester erred in his treatment of claim 23, (Filing 111, at 45–52), regarding a portion of the rebuttal closing argument of one of the lawyers who represented the State of Nebraska at trial. In one sentence of a rebuttal closing argument that lasted approximately 48 minutes, the prosecutor stated, "The State doesn't prove this case beyond a reasonable doubt, then the State shouldn't win *and this defendant should walk out of this courtroom a free man.*" (Filing 71, Vol. XVIII, at 2239:3–5 (emphasis added).)

Reeves' lawyers moved for a mistrial and alternatively asked that the jury be told of the effects of a finding that Reeves was not guilty by reason of insanity. The trial judge denied the motions, stating that he thought the prosecutor's remarks had nothing to do with the insanity defense.

Reeves argued to Judge Piester that "[t]he prosecutor's statement that Defendant would 'walk out of this courtroom a free man' vitiat-

ed Petitioner's insanity defense and invited a jury verdict based on caprice and emotion in violation of the Eighth and Fourteenth Amendments." (Pet'r's Br. Supp. First Am. Pet. at 34.) Essentially, Reeves contends the jury might have been afraid that had they found him insane, Reeves would have been "free" to commit further violence and, therefore, the jury would not have paid serious attention to the insanity question.

Judge Piester ruled that the relevant question was whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Pickens v. Lockhart*, 4 F.3d 1446, 1453 (8th Cir.1993), *cert. denied sub nom. Pickens v. Norris*, —— U.S. ——, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994). Reeves does not challenge this legal proposition. Judge Piester then observed that he thought, as did the trial judge, that the prosecutor's remarks were not addressed to the insanity question, but rather were addressed to the question of guilt on the merits. Petitioner strongly disagrees with this conclusion.

Judge Piester ruled that in order to prevail on this issue in this habeas corpus action, Petitioner bore the burden of proving a "reasonable probability" that the result of the trial would have been different absent the prosecutor's statement. *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir.), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987). *See Schlup v. Armontrout*, 941 F.2d 631, 640 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1273, 117 L.Ed.2d 499 (1992). Petitioner does not disagree with this legal proposition.

Finally, Judge Piester found that Reeves had failed to demonstrate a "reasonable probability" that the result would have been different absent the prosecutor's statement. Reeves, of course, disagrees.

Reeves' counsel particularly calls my attention to *Simmons v. South Carolina*, —— U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (holding that during penalty phase of death penalty case, it was constitutional error to allow a prosecutor to argue the future dan-

gerousness of defendant (such as, "Your verdict will be an act of self-defense") if defendant was not put to death, when the trial judge refused to instruct the penalty-phase jury that defendant was ineligible for parole if sentenced to life in prison).

I do not believe *Simmons* is relevant to this case. The *Simmons* opinion dealt with the question of what a jury could consider in the *penalty* phase of a death sentence case. The issue before me regards trial on the merits, and has nothing to with the entirely different question of what is appropriate information to provide or withhold from the entity which will determine whether a death sentence is appropriate.

For the sake of argument, however, I am willing to assume that *Simmons* might support an assertion that the prosecution may not create a "false dilemma" for a trial jury by arguing that if the defendant were found insane he would be released to prey upon society, while withholding from the jury information about what the legal system would actually do with the defendant if he were found insane. *See, e.g., Shannon v. United States*, —— U.S. ——, ——, 114 S.Ct. 2419, 2428, 129 L.Ed.2d 459 (1994) (holding that in the federal system there is no statutory authority for a federal court to instruct on the consequences of an insanity verdict and that such an instruction is not to be given as a matter of practice, but recognizing that if a prosecutor or witness made an improper "go-free" argument or statement, it might be necessary for the trial court to intervene).

Even making this assumption, the record *in this case* fails to establish that the jury's verdict would, to a "reasonable probability," have been different if the prosecutor had not made the challenged remark. *Hamilton v. Nix*, 809 F.2d at 470. I reached this conclusion for three reasons.

First, the remark was exceedingly brief, and it was buried in a rebuttal argument, neither at the beginning nor at the end of the argument.[25] The rebuttal argument itself lasted approximately 48 minutes. (Filing 71,

---

25. The argument began at page 2219 of the relevant volume of the transcript; the remark appeared at the top of page 2239; and the argu-

ment ended at page 2244. (Filing 71, Vol. XVI-II.)

Vol. XVIII, at 2218:15–17; 2219:5–7; 2245:21–22.) The remark is one sentence of text out of approximately 125 pages of recorded closing arguments. (*Id.* at 2119–2244.) The arguments of counsel for the prosecution and counsel for the defense lasted approximately 4 hours, not counting morning, noon, and afternoon recesses. (*Id.* at 2114:23; 2152:2; 2184:7–8; 2187; 2202:4, 7–8; 2218:11; 2245:20.) The brevity of the remark, in the context of the extended arguments of counsel, suggests that it would have had little impact.

Second, the remark itself is ambiguous as to whether it is directed at the question of insanity, the question of guilt on the merits, or something else entirely.[26] Moreover, when I read the statement, and the arguments that precede and follow it, it is simply unclear whether the prosecutor was referring to the question of insanity, the question of guilt on the merits, both of these issues, or something else altogether.

Nevertheless, the very ambiguity of the statement convinces me that if it was related to the issue of insanity, the statement lacked prejudicial impact since it would have been unclear to the jury that the prosecutor's comments pertained to the insanity question. This is true whether the statement is examined alone or in the context of surrounding argument.

Because the remark was ambiguous, the trial judge's "do-nothing" option was not prejudicial (particularly given the instruction discussed below), even if I assume the remark was directed at the insanity issue. *See, e.g., Shannon,* —— U.S. at ——, 114 S.Ct. at 2428 (stating that in the event of an improper "go-free" remark, "[t]he appropriate response, of course, will vary as is necessary to remedy the specific misstatement or error.").

Third, *before* the lawyers gave their arguments, (Filing 71, Vol. XVIII, at 2114:20–24), the jury was explicitly instructed by the trial judge not to concern itself with what would happen to Reeves in the event he was found insane. The jury was instructed in pertinent part that:

> You have nothing whatever to do with the ... disposition of the defendant in the event of ... acquittal by reason of insanity. Therefore, in determining his guilt or innocence, you have no right to take into consideration what ... disposition he may or may not receive in the event of ... his acquittal by reason of insanity.

(Filing 71, at 274 (Clerk's Tr. Instruction 29).)[27]

---

26. I am not quite as confident as Judge Piester and the trial judge that the remark pertained only to the question of guilt on the merits as opposed to the question of insanity. Of course, if Judge Piester is correct, the statement did no harm to Petitioner because it was Petitioner's theory that the statement harmed his insanity defense, not his defense as to guilt on the merits. If the statement was actually directed to guilt on the merits, then the predicate for Petitioner's argument fails. As the Supreme Court recognized in *Shannon,* the dilemma a jury faces when it is confronted with an option to vote not guilty on the merits in a case involving a potentially dangerous person is no reason to assume that the jury violated its oath if it voted to convict. As observed by the Court, "if the Government fails to meet its burden of proof at trial, our judicial system necessarily assumes that a juror will vote to acquit, rather than convict, even if he is convinced the defendant is highly dangerous and should be incarcerated." *Shannon,* —— U.S. at ——, 114 S.Ct. at 2427.

On the other hand, I am not as confident as Petitioner's counsel that the argument related to the insanity defense. When read in the context of the surrounding argument, the statement could well have been addressed to either guilt on the merits or the question of insanity, or both issues together.

There is a third possibility that neither Petitioner nor Respondent explores. The remark could simply have been a variation of a frequently observed rhetorical technique of prosecutors unrelated to any specific issue in the case. I have often observed government lawyers tell a jury that the government "willingly accepts its burden" and "agrees with the defense that if we fail in our burden, then you, the jury, must acquit the defendant." By thus appearing to a jury to be "fair"—the rhetorical label is "ethical appeal"—the prosecutor hopes only to persuade the jury that his/her argument is based upon a fair assessment of the facts. Such an appeal is not necessarily a sinister effort to persuade by fear. Nor is such an appeal necessarily likely to produce a verdict driven by fear.

27. I also note that this was the last instruction given before arguments began. There were 30 instructions, and the trial judge gave all except instruction No. 30 before arguments began. (Filing 71, Vol. XVIII, at 2114:20–24.)

This instruction made clear that speculation about whether Reeves would "go free" was not an appropriate concern for the jury. Therefore, *if* the prosecutor's "go-free" remark was directed at the insanity question, the jury had been instructed to disregard any such speculation. As a consequence, it is perfectly proper to assume that the jury followed this very explicit instruction. *See, e.g., Shannon,* —— U.S. at ——, 114 S.Ct. at 2427 (noting that in a case where the jury had been instructed not to consider issues of punishment, the not-guilty-by-reason-of-insanity option was "no reason to depart from 'the almost invariable assumption of the law that jurors follow their instructions.'" (quoting *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987))).

### F.

■ Finally, Petitioner argues in claim 44 that his trial counsel was ineffective because counsel did not challenge the admission of Janet Mesner's "deathbed" statements when they were received in evidence at trial.

Judge Piester ruled, (Filing 111, at 27–31), that since Petitioner admitted the argument raised in this claim was not presented to the state court, there was a procedural default that barred this court's consideration of the claim. Petitioner does not dispute that the claim is procedurally defaulted, but argues that this court can, and should, overlook the default because if it does not, a fundamental miscarriage of justice will result.

With regard to the miscarriage-of-justice argument, Judge Piester found that Petitioner was not actually innocent since he admitted the killings and his admissions were corroborated. Therefore, the exception for fundamental miscarriage of justice did not apply because it could not be concluded "clearly and convincingly" that the jury would have voted to acquit if the supposed error had not occurred. *Schlup v. Delo,* 11 F.3d 738, 739–44 (8th Cir.1993) (applying *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), to the guilt phase of trial and holding that the petitioner must show by clear and convincing evidence a colorable claim of factual innocence in order to invoke miscarriage-of-justice exception), *cert. grant-*

*ed,* —— U.S. ——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994). Accordingly, Judge Piester believed he was precluded from addressing the merits of this issue due to a procedural default that was not excused.

As noted, the United States Supreme Court has granted certiorari in *Schlup v. Delo.* The petitioner in *Schlup* argued to the Court that he need show only a fair probability that the trier of fact would have entertained a reasonable doubt of his guilt under *Kuhlmann v. Wilson,* 477 U.S. 436, 454 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986), in order to avoid a procedural default. *See* 63 U.S.L.W. 3025 (July 19, 1994) (*Schlup v. Delo* (No. 93–7901)); (Pet'r's Br. U.S. Sup. Ct.) *Schlup v. Delo* (No. 93–7901) 1994 WL 249158, at 2.

For the sake of argument, and since *Schlup* has not been decided at this writing, I shall assume, to give Petitioner the benefit of the doubt, that he need show only a fair probability that the trier of fact would have entertained a reasonable doubt of his guilt, rather than adhere to the more stringent *Sawyer* standard, in order to avoid a procedural default. Even with this assumption, however, Reeves' argument still fails.

Reeves cannot establish a "fair probability" that a jury would have entertained a reasonable doubt as to his guilt even if Mesner's statements had not been admitted into evidence. This is true for the following reasons:

(1) Reeves made various confessions admitting, among other things, that: (a) he raped and stabbed Mesner, (Filing 71, Vol. XI, Wilkins Test. at 601:24–602:1); (b) he remembered having the knife in his hand, (*id.* at 602:23–24); (c) the stabbings occurred in "her bedroom," (*id.* at 603:3–4); (d) he stabbed her in the chest area, (*id.* at 603:5–6); (e) when asked whether he had stabbed anyone else, he stated, "I think so," (*id.* at 603:12–13); (f) when Reeves was asked why he had stabbed and raped Mesner, the police officer who interviewed Reeves testified that "all he could remember was that he had went to that house to have sex with Janet and that, for some reason or another, he had stabbed and tried to rape her," (*id.* at

603:17–19); and (g) the location of the house was the "Friendship House," which was "some kind of Quaker · church." (*Id.* at 603:24–25).

(2) These confessions were corroborated by, among other things, the following: (a) Early on the morning of the killings, Reeves told a friend he wanted to visit a girl, and the friend dropped Reeves off near the scene of the crime, (Filing 71, Volume XIII, at 1062:12–1064:11); [28] (b) around 2:00 a.m., a woman noticed a man trying to gain entry into the Friends' meeting house where the crime took place, and the man appeared to be "Mexican or Indian," (Filing 71, Vol. IX, at 36:17–40:4); (c) Reeves is a Native American, (Filing 71, Ex. 26, at 21 (Appellant's Br. Neb.Sup.Ct. *Reeves I* )); (d) men's underwear found at the scene of the crime contained semen matching Reeves' blood type, (Filing 71, Vol. XII, at 952:5–955:25); (e) Mesner's vaginal acid phosphatase levels were consistent with having had intercourse, (*id.* at 986:21–23); and (f) blood of Mesner's type, (*id.* at 922:21–928:16; 953:10–15), was found on Reeves' penis. (*Id.* at 968:7–18.)

No matter whether the *Kuhlmann v. Wilson* test or the *Sawyer v. Whitley* test is applied, Reeves fails to establish his claim of "actual innocence" and, therefore, the procedural default of his ineffectiveness-of-counsel argument may not be excused.

### IV.

I adopt Judge Piester's report and recommendation as supplemented by this memorandum. In so doing, I make two final observations.

First, the court recognizes the service of appointed counsel for Reeves. Death penalty cases require much of appointed counsel, and the court wishes to thank counsel for their service.

Second, nothing I have said in this opinion is intended as a criticism of the Nebraska Supreme Court. The Nebraska Supreme Court is entitled to the greatest possible respect from this court. The difference of

opinion between the Nebraska Supreme Court and this court regarding the appellate resentencing issue represents nothing more or less than a good faith disagreement about what the law requires in the challenging context of death penalty jurisprudence.

IT IS ORDERED that:

(1) Judge Piester's report and recommendation (Filing 111) is adopted as supplemented by the foregoing;

(2) The objections of Petitioner (Filing 116) and Respondent (Filing 114) are denied;

(3) Judgment shall be entered by separate document, providing that:

"Judgment is entered:

(a) For Petitioner and against Respondent on claims 31 and 32, providing that the writ of habeas corpus shall issue and Petitioner shall be resentenced to life in prison unless, within sixty (60) days of the date of the entry of judgment, Respondent initiates resentencing proceedings before the District Court of Lancaster County, Nebraska;

(b) Dismissing without prejudice claims 5, 6, 26, 27, 34, 36 and 38; and

(c) For Respondent and against Petitioner on all other claims."

### EXHIBIT A

to Memorandum and Order

of December 16, 1994

1. Death penalty statutes *Neb.Rev.Stat.* § 29–2521 *et seq.* are unconstitutional because the sentencing panel is not required to enunciate which non-statutory mitigating factors were considered and found to exist.

2. Death penalty statutes are unconstitutional because the sentencing panel may consider uncounseled prior convictions and unadjudicated misconduct.

3. Death penalty statutes are unconstitutional because no notice is required as to which aggravating circumstances will be used at sentencing.

---

**28.** The killings took place at 3319 South 46th Street in Lincoln, Nebraska, (Filing 71, Vol. IX, at 16:12–16), and Reeves was dropped off at approximately 40th and Calvert Streets. (Filing 71, Vol. XIII, at 1064:9–11.) These two locations are about 8 blocks apart.

4. Death penalty statutes are unconstitutional because no standards given as to whether a single judge or a three judge panel may make the sentencing decision.

5. Aggravating factor "(1)(d)" (*Neb.Rev.Stat.* § 2523(1)(d) "especially heinous, atrocious, cruel or manifest exceptional depravity by ordinary standards of morality and intelligence") is unconstitutionally vague.

6. Aggravating factor "(1)(b)" (*Neb.Rev.Stat.* § 2523(2)(b) "apparent effort to conceal the commission of a crime") is unconstitutionally vague.

7. Death penalty statutes are unconstitutional because petitioner is denied the right to have a jury determine aggravating and mitigating factors.

8. Sentencing panel improperly considered uncounseled convictions to negate a mitigating factor.

9. Sentencing panel improperly considered "inaccurate and unreliable allegations of unadjudicated misconduct" to negate a mitigating factor.

10. Sentencing panel applied the incorrect standard for mitigating factor "(2)(c)" (*Neb.Rev.Stat.* § 2523(2)(c) "under the influence of extreme mental or emotional disturbance").

11. Sentencing panel erroneously applied aggravating factor "(1)(d)" with regard to the death of Janet Mesner.

12. Sentencing panel erroneously applied aggravating factor "(1)(b)" with regard to the death of Victoria Lamm.

13. Sentencing panel failed to consider or make factual findings regarding non-statutory mitigating factors.

14. Sentencing panel relied on non-statutory aggravating factors when it sentenced petitioner to death.

15. Petitioner was charged by an information rather than an indictment.

16. The jury was "death qualified."

17. Prosecuting attorney was also a witness in the case.

18. Trial court interfered with testimony of defense witnesses.

19. "Reasonable doubt" instruction was unconstitutional.

20. The convictions for felony murder are unconstitutional:

 a. the jury instructions created a conclusive presumption of intent to kill;

 b. no instruction on the lesser included offenses of second degree murder and manslaughter was given; and

 c. all types of first degree murder except felony murder have lesser included offenses.

21. Felony murder statute conclusively presumes guilt.

22. Trial court failed to instruct jury on defense of diminished capacity.

23. Prosecuting attorney misstated the law during his closing argument, and the trial court failed to instruct the jury on the consequences of a verdict of not guilty by reason of insanity.

24. Sentencing panel used improper reasonable doubt standard when considering aggravating factors.

25. Sentencing panel received presentence investigation report with unreliable and inaccurate information contrary to an earlier court order.

26. Presentence investigation report contained uncounseled statements petitioner gave to a probation officer.

27. Presentence investigation report contained unreliable and inaccurate information, was racially biased and contained hearsay and speculative statements.

28. Trial judge directed probation officer to include certain information in presentence investigation report in order to obtain aggravating factors for sentencing.

29. Petitioner was denied a full and fair hearing on sentencing matters because the Nebraska Supreme Court on direct appeal found that the sentencing panel had committed errors.

30. The Nebraska Supreme Court failed to remand the action to the district court for resentencing on direct appeal.

31. On remand, the Nebraska Supreme Court sentenced petitioner in a manner not prescribed by state statute.

32. Nebraska Supreme Court acted as an unreviewable sentencing panel when sentencing petitioner on remand.

33. Nebraska Supreme Court failed to give fair and adequate consideration to all mitigating factors when sentencing petitioner on remand.

34. On remand the Nebraska Supreme Court denied petitioner notice and an opportunity to be heard.

35. On remand the Nebraska Supreme Court improperly considered evidence of uncounseled prior convictions.

36. On remand the Nebraska Supreme Court improperly considered evidence of "inaccurate and unreliable allegations of unadjudicated misconduct."

37. On remand the Nebraska Supreme Court applied the incorrect standard when it determined that mitigating factor "(2)(c)" did not exist.

38. On remand the Nebraska Supreme Court applied the incorrect standard when applied aggravating factor "(1)(d)" with regard to the death of Janet Mesner.

39. On remand the Nebraska Supreme Court applied the incorrect standard when applied aggravating factor "(1)(b)" with regard to the death of Victoria Lamm.

40. On remand the Nebraska Supreme Court failed to consider or make factual findings regarding non-statutory mitigating factors.

41. On remand the Nebraska Supreme Court relied on non-statutory aggravating factors.

42. On remand the Nebraska Supreme Court applied improper "reasonable doubt" standard to aggravating factors.

43. On remand the Nebraska Supreme Court failed to make findings regarding aggravating and mitigating circumstances as required by state statute.

44. Petitioner was denied effective assistance of counsel at trial and during his sentencing hearing.

## MEMORANDUM, ORDER AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

This is a capital case in which petitioner, Randolph K. Reeves, seeks a writ of habeas corpus. In such a case this court's inquiry is limited. This court may not examine whether the petitioner is guilty or innocent of the crimes of which he stands convicted, nor whether he deserves to be put to death. This court's inquiry is, instead, restricted to whether at his trial and sentencing the state of Nebraska accorded him the rights guaranteed all citizens by the Constitution of the United States. If a constitutional right was violated, the likely remedy is that the petitioner may be placed back before the state courts for resentencing or a second trial, there to face anew the charges and penalties available under state law.

Pending before the court is the amended petition for writ of habeas corpus. (Filing 58). Also pending are two motions to expand the record (filings 69 & 97), a motion for an evidentiary hearing (filing 68) and a motion to conduct discovery. (Filing 95). For reasons discussed more fully below I shall recommend the writ be granted and the respondent be required to grant petitioner a new sentencing hearing within a reasonable time. Further, I shall deny the four evidentiary motions.

## I. BACKGROUND

In 1981 petitioner was convicted of two counts of first degree murder in the Lancaster County District Court. On March 29, 1980 petitioner had broken into the home of Janet Mesner, petitioner's cousin. Petitioner either sexually assaulted, or attempted to sexually assault Mesner, and repeatedly stabbed her. He also stabbed Victoria Lamm, a houseguest of Mesner. Petitioner left a number of items in the house, including his wallet and underwear. Mesner was able

to call police and, because he was related to her, identify petitioner as the attacker. Both Lamm and Mesner died as a result of the stab wounds.

Petitioner was arrested that night and questioned by police officers. He stated that he had little recollection of the events because he had been drinking alcohol and using peyote the day and evening preceding the killings. He was also interviewed by Lancaster County Attorney Ronald Lahners who represented the state at trial. Lahners eventually charged petitioner, by information, with two counts of felony murder. Petitioner pleaded not guilty and not guilty by reason of insanity to both counts. The jury found petitioner guilty of two counts of first degree murder. A three-judge sentencing panel accepted testimony, reviewed the trial transcripts and a presentence investigation report (PSI) and sentenced petitioner to death. The panel held that the state had proved beyond a reasonable doubt that three aggravating factors existed for both murders. The panel also found that no statutory mitigating circumstances were present and that the non-statutory mitigating factors did not outweigh the aggravating factors. The panel sentenced petitioner to death by electrocution for both murders.

The Nebraska Supreme Court affirmed the verdicts and sentences. *State v. Reeves,* 216 Neb. 206, 344 N.W.2d 433 (1984). (*Reeves I* ). However, the court determined that the district court had erroneously failed to find the existence of a statutory mitigating factor for both of the killings. Further, the court determined that one of the aggravating factors was erroneously applied to the Victoria Lamm killing. Nonetheless, the court reweighed the factors and held that the sentences were correct for both murders. The United States Supreme Court denied certiorari, *Reeves v. Nebraska,* 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 372 (1984).

Petitioner then filed a motion for postconviction relief. The motion was denied by the district court; that judgment was affirmed by the Nebraska Supreme Court. *State v. Reeves,* 234 Neb. 711, 453 N.W.2d 359 (1990). (*Reeves II* ). The United States Supreme Court granted certiorari and, without discussion, reversed and remanded the case to the state court for further consideration in light of *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). *Reeves v. Nebraska,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 409 (1990).[1] Based on the Supreme Court decision the Nebraska Supreme Court, on December 4, 1990, issued the following order:

IT IS HEREBY ORDERED that argument in this matter be set for January 10, 1991, in accordance with the remand of the Supreme Court of the United States dated November 13, 1990.

The parties are given until Monday, December 31, 1990, to submit simultaneous supplemental briefs covering the subject of the remand.

Petitioner filed a number of motions seeking to clarify the nature of the proceeding the Nebraska Supreme Court envisioned. Petitioner's brief expressed confusion over the proper scope of the proceeding, and it questioned whether the court was seeking arguments over the scope of the court's authority to resentence, or whether arguments should be made about the actual sentencing factors on the evidence accepted by the sentencing court.

The Nebraska Supreme Court conducted an independent *de novo* review of the record for sentencing and imposed a sentence of death. *State v. Reeves,* 239 Neb. 419, 476 N.W.2d 829 (1991) (*Reeves III* ). The court *resentenced* petitioner; the decision was not merely a review of the district court's sentence. The court stated that the *Clemons* decision stood for the proposition that neither the due process clause nor the Eighth Amendment prevents an appellate court from

---

1. The entirety of the Court's order was:
 On petition for writ of certiorari to the Supreme Court of Nebraska. The motion of petitioner for leave to proceed in forma pauperis and the petition for writ of certiorari are granted. The judgment is vacated and the case is remanded to the Supreme Court of Nebraska for further consideration in light of *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).
 *Reeves v. Nebraska,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 409 (1990).

reweighing aggravating and mitigating circumstances and imposing a sentence of death "where there has been an error concerning the trial court's finding of aggravating and/or mitigating circumstances." *Id.* 239 Neb. at 423, 476 N.W.2d 829.

Conducting the independent review, the court found that, with regard to the murder of Janet Mesner, two aggravating factors and one statutory mitigating factor were present.[2] For the murder of Victoria Lamm, the court found that two aggravating factors and one statutory mitigating factor were present.[3] The court discussed evidence of non-statutory mitigating circumstances and stated that the aggravating factors outweighed the statutory and nonstatutory mitigating factors. *Id.* at 436, 476 N.W.2d 829. Thus, the court sentenced petitioner to death for both murders. *Id.* at 437, 476 N.W.2d 829. The United States Supreme Court denied the petition for writ of certiorari. *Reeves v. Nebraska,* — U.S. ——, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992).

The original petition in this habeas action was filed on July 27, 1990. At that point, the Nebraska Supreme Court had denied rehearing after *Reeves II* and had set an execution date for August 15, 1990. While petitioner had submitted a petition for writ of certiorari with the Supreme Court for review of *Reeves II* prior to initiating the habeas action, respondent was not required to submit a brief in opposition to the petition for certiorari until after the execution date. This court entered a stay of execution prior to the time the Supreme Court granted certiorari and remanded the case to the Nebraska Supreme Court. No further action was taken in this case until after the state court decided *Reeves III.* Respondent did not answer the original petition until November 4, 1992. While this action has been pending for nearly four years, the delay was caused, in large part, by the necessity of filing the action before the original execution date. The intervening Supreme Court decision necessitated further state court proceedings which prevented this habeas action from proceeding.

The amended petition raises 44 claims:

1. Death penalty statutes *Neb.Rev.Stat.* § 29–2521 *et seq.* are unconstitutional because the sentencing panel is not required to enunciate which non-statutory mitigating factors were considered and found to exist.

2. Death penalty statutes are unconstitutional because the sentencing panel may consider uncounseled prior convictions and unadjudicated misconduct.

3. Death penalty statutes are unconstitutional because no notice is required as to which aggravating circumstances will be used at sentencing.

4. Death penalty statutes are unconstitutional because no standards given as to whether a single judge or a three judge panel may make the sentencing decision.

5. Aggravating factor "(1)(d)" (*Neb.Rev.Stat.* § 2523(1)(d) "especially heinous, atrocious, cruel or manifest exceptional depravity by ordinary standards of morality and intelligence") is unconstitutionally vague.

6. Aggravating factor "(1)(b)" (*Neb.Rev.Stat.* § 2523(2)(b) "apparent effort to conceal the commission of a crime") is unconstitutionally vague.

7. Death penalty statutes are unconstitutional because petitioner is denied the

---

2. The court found the following aggravating factors were proven beyond a reasonable doubt: 1(d) "the murder was especially heinous, atrocious, cruel or manifested exceptional depravity by ordinary standards of morality and intelligence" (the court found that the first prong of that factor was present; *see Harper v. Grammer,* 895 F.2d 473 (8th Cir.1990) (discussing the two prongs of this factor)); and 1(e) "At the time the murder was committed, the offender also committed another murder."

The court also found the presence of mitigating factor 2(g) "At the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication."

3. The court found the following aggravating factors had been proven beyond a reasonable doubt: 1(e) and 1(b) "The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime." The court also found that mitigating circumstance 2(g) was present.

right to have a jury determine aggravating and mitigating factors.

8. Sentencing panel improperly considered uncounseled convictions to negate a mitigating factor.

9. Sentencing panel improperly considered "inaccurate and unreliable allegations of unadjudicated misconduct" to negate a mitigating factor.

10. Sentencing panel applied the incorrect standard for mitigating factor "(2)(c)" (*Neb.Rev.Stat.* § 2523(2)(c) "under the influence of extreme mental or emotional disturbance").

11. Sentencing panel erroneously applied aggravating factor "(1)(d)" with regard to the death of Janet Mesner.

12. Sentencing panel erroneously applied aggravating factor "(1)(b)" with regard to the death of Victoria Lamm.

13. Sentencing panel failed to consider or make factual findings regarding non-statutory mitigating factors.

14. Sentencing panel relied on non-statutory aggravating factors when it sentenced petitioner to death.

15. Petitioner was charged by an information rather than an indictment.

16. The jury was "death qualified."

17. Prosecuting attorney was also a witness in the case.

18. Trial court interfered with testimony of defense witnesses.

19. "Reasonable doubt" instruction was unconstitutional.

20. The convictions for felony murder are unconstitutional:

 a. the jury instructions created a conclusive presumption of intent to kill;

 b. no instruction on the lesser included offenses of second degree murder and manslaughter was given; and

 c. all types of first degree murder except felony murder have lesser included offenses.

21. Felony murder statute conclusively presumes guilt.

22. Trial court failed to instruct jury on defense of diminished capacity.

23. Prosecuting attorney misstated the law during his closing argument, and the trial court failed to instruct the jury on the consequences of a verdict of not guilty by reason of insanity.

24. Sentencing panel used improper reasonable doubt standard when considering aggravating factors.

25. Sentencing panel received presentence investigation report with unreliable and inaccurate information contrary to an earlier court order.

26. Presentence investigation report contained uncounseled statements petitioner gave to a probation officer.

27. Presentence investigation report contained unreliable and inaccurate information, was racially biased and contained hearsay and speculative statements.

28. Trial judge directed probation officer to include certain information in presentence investigation report in order to obtain aggravating factors for sentencing.

29. Petitioner was denied a full and fair hearing on sentencing matters because the Nebraska Supreme Court on direct appeal found that the sentencing panel had committed errors.

30. The Nebraska Supreme Court failed to remand the action to the district court for resentencing on direct appeal.

31. On remand, the Nebraska Supreme Court sentenced petitioner in a manner not prescribed by state statute.

32. Nebraska Supreme Court acted as an unreviewable sentencing panel when sentencing petitioner on remand.

33. Nebraska Supreme Court failed to give fair and adequate consideration to all mitigating factors when sentencing petitioner on remand.

34. On remand the Nebraska Supreme Court denied petitioner notice and an opportunity to be heard.

35. On remand the Nebraska Supreme Court improperly considered evidence of uncounseled prior convictions.

36. On remand the Nebraska Supreme Court improperly considered evidence of "inaccurate and unreliable allegations of unadjudicated misconduct."

37. On remand the Nebraska Supreme Court applied the incorrect standard when it determined that mitigating factor "(2)(c)" did not exist.

38. On remand the Nebraska Supreme Court applied the incorrect standard when applied aggravating factor "(1)(d)" with regard to the death of Janet Mesner.

39. On remand the Nebraska Supreme Court applied the incorrect standard when applied aggravating factor "(1)(b)" with regard to the death of Victoria Lamm.

40. On remand the Nebraska Supreme Court failed to consider or make factual findings regarding non-statutory mitigating factors.

41. On remand the Nebraska Supreme Court relied on non-statutory aggravating factors.

42. On remand the Nebraska Supreme Court applied improper "reasonable doubt" standard to aggravating factors.

43. On remand the Nebraska Supreme Court failed to make findings regarding aggravating and mitigating circumstances as required by state statute.

44. Petitioner was denied effective assistance of counsel at trial and during his sentencing hearing.

## II. SCOPE OF HABEAS REVIEW

### Availability of Relief

The amended petition raises issues regarding both the guilt/innocence and sentencing phases of petitioner's case. The sentencing claims involve decisions made by the original sentencing panel, the Nebraska Supreme Court on direct appeal and the Nebraska Supreme Court on remand from the United States Supreme Court. Respondent argues that petitioner was *resentenced* by the court on remand and that the earlier sentencing decisions are not relevant to this habeas action. (Respondent's Brief, at 2–4).

I agree. The court on remand did not purport to merely review the decision of the sentencing panel; rather, the court independently conducted a comprehensive reweighing of all of the sentencing factors and reached an independent decision that the proper sentences were death for both murders. Petitioner's death sentences are the result of the Nebraska Supreme Court's decision in *Reeves III*, not the decision in *Reeves I* or the sentencing panel's original sentence. Petitioner is "in custody" because of the decision in *Reeves III*, not the other decisions. Therefore, 28 U.S.C. § 2254 allows him to challenge only the sentencing decisions made by the court in *Reeves III*. Habeas relief should not be granted on the basis of claims addressing alleged constitutional violations in the sentencing phase of petitioner's proceedings except to the extent the claims directly address *Reeves III*. Thus, as an initial matter, the following claims should be denied: 1, 2, 4, 8, 9, 10, 11, 12, 13, 14, 24, 25, 28, 29 and 30.

### Abandonment

Respondent has argued that a number of claims raised in the petition should be considered abandoned. In the reply brief petitioner explicitly has abandoned a number of claims: 3, 7, 15, and 16. Respondent argues that a number of other claims were not argued in either the original or reply brief. After reviewing the briefs and the petition, I am satisfied that petitioner has sufficiently argued the merits of all other claims except 33, 35, 37, 41, 43 and the portion of claim 44 not related to the two claims of ineffective assistance of trial counsel argued in the original brief.

▆▆▆ Petitioner's original brief failed to discuss the merits of a number of claims raised in the petition. Respondent asserted that any unargued claims should be treated as abandoned. Petitioner then moved to submit a reply brief. However, petitioner again failed to address numerous claims which respondent argued were abandoned. I conclude that claims whose merits [4] have not

---

4. Because the procedural stance of a number of the claims remained unclear the court ordered the parties to submit additional briefs, limited to the *procedural* issues surrounding the "remand" claims—claims 31–43. (Filing 100). A number

of the "abandoned" claims were at issue in the briefs submitted by the parties. These claims are 33, 35, 37, 41 and 43. While petitioner addressed the procedural issues of all of those claims in his brief responding to filing 100, he

been argued in either petitioner's original or reply brief must be considered abandoned. *See* NELR 39.2(c); *see also Williams v. Armontrout*, 679 F.Supp. 916, 922 (W.D.Mo. 1988) (when brief and traverse prepared by petitioner's counsel failed to provide any factual or legal argument in support of certain claims presented in the pro se petition, those claims were considered abandoned), *aff'd*, 912 F.2d 924 (8th Cir.1990), *cert. denied*, 498 U.S. 1127, 111 S.Ct. 1092, 112 L.Ed.2d 1197 (1991).

In his reply brief petitioner argues that, with the exception of claims he explicitly abandons, none of the claims should be considered abandoned. Responding to the contention that unargued claims should be considered abandoned, petitioner states:

> Mr. Reeves elected in his Brief to present these claims in a manner which his counsel determined would most efficiently facilitate their consideration. The sheer volume of the errors committed in this case prohibits the protracted discussion of the nearly two hundred errors separately. Petitioner has elected to focus on the more complex issues, and minimize his discussion of the more self-evident constitutional violations. * * * Petitioner respectfully asks this Court that he not be penalized because of the sheer volume of the errors committed throughout his judicial proceeding.

(Petitioner's Reply Brief, at 16.)

I sympathize with the problem facing petitioner's counsel. Certainly, numerous errors are alleged, and it is quite time consuming and difficult to review all of them. Nonetheless, if the issues are to be considered, they must be addressed by someone. Petitioner's counsel have been given a great length of time, including extensions, to review the records in this case and prepare the briefs. Although petitioner's repeated failure to discuss the merits of many of his claims has been brought to his attention, he persists in arguing that the claims should be considered by the court. The court declines petitioner's

invitation for a number of reasons. First, the court's duty is to consider claims raised, researched and argued by the parties; petitioner may not place the burden of arguing his claims on the court. Second, allowing petitioner to pursue this course of action is blatantly unfair to the respondent. When petitioner fails to advance an argument to support a claim, respondent has nothing against which to forward a rebuttal. Respondent has continually noted in his briefs that certain claims were not argued, leaving him nothing to rebut. If the court creates the petitioner's argument in the first instance, respondent has had no opportunity to argue his own position. Petitioner's route effectively bypasses respondent's position in this habeas action.

Because of such concerns, this court has adopted local rules requiring parties to argue the merits of their claims in briefs to the court. *See* NELR 39.2(c), (d). Local Rule 39.2 states, "When a judge has set a time for submitting a brief, the failure to submit a brief or to discuss an issue in the brief submitted may be treated as an abandonment of that party's position on any issue not discussed." NELR 39.2(c). Further,

> In matters brought pursuant to 28 U.S.C. § 2254 and 2255 counsel shall file with the court the briefs submitted by the petitioner or movant on direct appeal, and they may be considered to be part of the records of the case. They shall not, however, be incorporated by reference in or considered to be the petitioner's or movant's brief in the habeas case.

NELR 39.2(d).

Petitioner's failure to argue the merits of a claim in either the original or reply brief is a violation of the local rules and compels a finding that unargued claims are abandoned. Petitioner's argument notwithstanding, the local rules may not be disregarded for the convenience of one party to an action. The claims whose merits petitioner has failed to argue will be deemed abandoned for failure

---

has failed to address, in any brief to this court, the merits of these claims. Respondent argued, in his response to filing 100 that these claims were abandoned because of the failure to address the merits in the original brief. Because petitioner failed to address the merits of these claims

in his original or reply brief as required by local rules, the mere fact that he addressed the procedural questions, at the direct order of the court, does not alter the conclusion that the these claims must be deemed abandoned.

to comply with the local rules. Together with those claims petitioner explicitly abandoned, the claims which I consider abandoned are 3, 7, 15, 16, 33, 35, 37, 41, 43 and those portions of claim 44 relating to actions other than the two issues raised in the brief.[5]

Claims Not Raised in Amended Petition

 The brief argues a number of issues not raised by the petition.[6] Such issues may not be addressed by this court. The amended petition, not the brief, provides the bases for granting the writ of habeas corpus. *Neal v. Grammer*, 769 F.Supp. 1523, 1526 (D.Neb. 1991), *aff'd*, 975 F.2d 463, 465 (8th Cir.1992); *see also Insurance Company of the State of Pennsylvania v. Hoffman*, 814 F.Supp. 782, 787 (D.Minn.1993) (declining to address allegations raised in a brief but not asserted in the amended complaint); *Berry v. Armstrong Rubber Company*, 780 F.Supp. 1097 (S.D.Miss.1991) (refusing to consider claim argued in brief but not alleged in any of three amended complaints), *aff'd*, 989 F.2d 822 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994).

### III. EXHAUSTION/FAIR PRESENTMENT

The claims which remain to be addressed by the court are 5, 6, 17–23, 26, 27, 31, 32, 34,

36, 38–40, 42 and 44. Respondent alleges that a number of these claims are procedurally defaulted: 5, 6, 18, 19, 20, 21, 27, 31, 32, 38–40, 42 and 44. According to Nebraska law claims which could have been presented on direct appeal may not be the subject of a motion for postconviction relief. *State v. Reddick*, 230 Neb. 218, 223, 430 N.W.2d 542 (1988). Similarly claims which could have been presented in the first postconviction action may not be raised in a second postconviction action. *State v. Luna*, 230 Neb. 966, 434 N.W.2d 526 (1989). In *Reeves II* the Nebraska Supreme Court noted that petitioner raised a number of claims in his postconviction action which should have been raised on direct appeal. However, the court continued,

> In his postconviction motions appellant has alleged numerous constitutional errors relating to his convictions and sentences. He has also alleged that his trial counsel were ineffective because they failed to raise, or to adequately raise, these issues on direct appeal. *Although we recognize we are not obligated to do so, we have considered each of the arguments made to this court on its merits* in the context of appellant's sixth amendment claim of ineffective assistance of counsel.

---

**5.** In the brief petitioner argues only two instances of ineffective assistance of counsel, both related to the guilt/innocence phase of the trial.

**6.** For instance petitioner argues at great length that his rights to equal protection of the law were denied when the prosecutor charged petitioner with only felony murder. Petitioner argues that no persons who are not Native Americans have been so charged in Lancaster County. That claim in not enunciated on the face of the petition. Petitioner's brief failed to explain how the issue had been raised, either as a claim in the petition or in the state courts. In a motion for leave to conduct discovery relating to this issue, petitioner alleges that the issue is implicit in grounds 1–14 and 20–22 of the amended petition. In an appendix to the reply brief petitioner argues that the issue is presented by claim 20, independent of other claims. I disagree with both assertions. These claims raise very different concerns than that raised by this argument. Further, even if one or all of these claims could be so broadly construed as to include this issue (and I find that they cannot be so broadly construed) the claims are procedurally defaulted.

Nowhere in the record was this equal protection issue raised to any state court. Although the

court in *Reeves II* lifted the procedural bar for a number of petitioner's claims, *see infra*, it did so only for those claims argued to the Supreme Court in petitioner's appellate briefs. This issue was not presented in those briefs. The issue could have been raised in that action but was not. As such, he has no presently available state court remedy. *See State v. Luna*, 230 Neb. 966, 434 N.W.2d 526 (1989) (second motion for postconviction relief may not be used to obtain review of issues which could have been raised in first postconviction action). To the extent that he raises a claim with this argument, the claim was not "fairly presented" to the state courts. *See Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir.1993) (to fairly present a claim the petitioner must provide state supreme court the opportunity to "rule on the factual and theoretical substance of his claims.") Thus, any such claim is now procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Petitioner has made no attempt to overcome a procedural default on the issue. Therefore, to the extent it raises a claim, the equal protection claim may not be considered in this action.

*Reeves II,* 234 Neb. at 715, 453 N.W.2d 359 (emphasis added). Thus, all claims petitioner raised in his postconviction appeal were considered and are not procedurally defaulted. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Of the allegedly defaulted claims, 5, 6, 18, 21, 27 and a portion of claim 20 were argued to the Nebraska Supreme Court in the postconviction appeal and may be considered on their merits. Claims 19, 44 and a portion of claim 20 were not argued on the postconviction appeal.

At the onset petitioner argues that the Nebraska statutory scheme allowing for (1) mandatory review of death penalty cases, and (2) plain error review, must result in a finding that none of the claims is procedurally defaulted. Petitioner argues that the statutory scheme "would preclude *any* claim by the state that *any* serious federal constitutional claim could be considered procedurally barred." (Petitioner's Brief in response to Filing 100, at 8). I cannot agree with that conclusion.

 For a claim to be cognizable in any habeas corpus action, whether capital or not, it must have been "fairly presented" to the highest state court. *See Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir.1993); *Laws v. Armontrout,* 863 F.2d 1377 (8th Cir.1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). As respondent notes, relying on "plain error" is antithetical to the notion of fair presentment. Petitioner's argument attempts to exempt himself from procedural default by placing the burden on the Nebraska Supreme Court to ferret out any potential error, create an argument and rule on it without the benefit of either party asserting an argument. Quite to the contrary, fair presentment requires *petitioner* to affirmatively

> "refer to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'"

*Leapley,* 5 F.3d at 1179 (quoting *Kelly v. Trickey,* 844 F.2d 557, 558 (8th Cir.1988) (quoting *Martin v. Solem,* 801 F.2d 324, 330–31 (8th Cir.1986))). "Plain error" obviously fails to fulfill this requirement. *Cf. Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971) (concluding that petitioner had not fairly presented his equal protection claim, explaining that the Supreme Judicial Court had "dealt with the arguments respondent offered; we cannot fault that court for failing also to consider sua sponte whether the indictment procedure denied respondent equal protection of the laws.")

The Nebraska Supreme Court has clearly indicated that death penalty defendants are *not immune* from the normal procedural rules merely because of the provisions for automatic review of such cases on direct appeal. In *State v. Victor,* 242 Neb. 306, 494 N.W.2d 565 (1993), *aff'd,* — U.S. —, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) a death row defendant attempted to raise a number of claims in his postconviction action which he could have, but failed to, raise on direct appeal. Despite the provision for automatic review, the Nebraska Supreme Court refused to consider the claims, stating:

> We have repeatedly held that a motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated on direct appeal. It is not the purpose of affording postconviction relief to permit the defendant endless appeals on matters already decided.

*State v. Victor,* 242 Neb. at 310–11, 494 N.W.2d 565. The Nebraska Supreme Court does not allow death row defendants carte blanche to ignore its procedural rules, notwithstanding the provisions for automatic review. I cannot agree that such an argument is viable in the current state of procedural habeas corpus law. To the extent that petitioner has attempted to overcome the failure to fairly present any claim by reliance on the plain error or automatic review procedures, his argument is without merit.[7]

7. I do not read *Bannister v. Armontrout,* 4 F.3d 1434 (8th Cir.1994) as requiring a contrary result. In *Bannister* the court of appeals was construing Missouri's procedural rules, and noted that (unlike petitioner) Bannister *had* raised his claims on direct appeal. *See id.* at 1444–45.

Claims 19 and 42

■ Petitioner makes a lengthy argument that claim 19, a claim about the reasonable doubt instruction used at trial, could have been considered on direct appeal through the court's plain error review. Further, he argues that claim 42, a related issue, was fairly presented on remand. The procedural bar issues need not delay consideration of claims 19 and 42 because the claims are without merit. *See Green v. Groose,* 959 F.2d 708, 709 (8th Cir.1992) (allowing the court to proceed past a procedural bar when the claim is clearly without merit.)

In claim 19 petitioner argues that the trial court's "reasonable doubt" instruction improperly lowered the state's burden of proof, thereby violating his due process rights. Claim 42 argues that the Nebraska Supreme Court applied the same, incorrect, standard to the existence of aggravating factors. The trial court used the Nebraska Pattern Jury Instruction for reasonable doubt. The United States Supreme Court recently considered this reasonable doubt issue and found that the Nebraska instruction does not violate any Constitutional protections. *Victor v. Nebraska,* — U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In *Morley v. Stenberg,* 25 F.3d 687 (8th Cir., 1994) the Eighth Circuit reached the same conclusion with the identical instruction given in petitioner's trial.

Petitioner has recognized that *Victor* and *Morley* present a formidable obstacle in his path. Nonetheless, he attempts to distinguish the cases on factual bases. He argues that neither *Victor* nor *Morley* involved a "conclusive presumption"[8] instruction or the insanity defense. Petitioner's contention is without merit. Regardless of what defenses petitioner raised at trial, the jury was instructed that the state must prove each element of the offense "beyond a reasonable doubt." The challenged instruction merely defined the meaning of "beyond a reasonable doubt." Both *Victor* and *Morley* determined that the instruction did not violate any constitutionally protected right. That other criminal defendants may have asserted different defenses is inconsequential given that the state was required in each case to prove the relevant elements of each offense "beyond a reasonable doubt." While petitioner discusses the differences in the case at great length, I cannot conclude the differences themselves change the conclusion reached by the courts in *Victor* and *Morley.* The reasonable doubt instruction used at petitioner's trial, and by implication by the Nebraska Supreme Court when it resentenced petitioner, did not violate any of petitioner's constitutional rights. Petitioner's reasonable doubt claims are without merit.

Claim 20

A fair reading of claim 20 in the petition indicates that the claim has three subparts[9]: (a) the jury instructions created a conclusive presumption of intent to kill; (b) no instruction on lesser included offenses was given; and (c) all types of first degree murder except felony murder have lesser included of-

---

The court also made clear that plain error analysis would not supplant procedural requirements for fair presentment. *See id.* at 1445 n. 16.

8. The "conclusive presumption" concerns the jury instruction regarding the felony murder charge. The jury was instructed that the felony murder statute did not require the state to prove the petitioner intended to kill either woman, but that the scienter was inferred from the intent to perform the underlying felony act. In claim 20 petitioner argues that the "conclusive presumption" jury instruction itself provides a basis for habeas relief.

9. The text of the claim is as follows:
The convictions and sentences of death were obtained in violation of Petitioner's constitutional rights in that the jury was incorrectly instructed by the trial court that the Petition-

er's intent to kill was conclusively presumed from the intent to commit a sexual assault, in that the jury was not instructed by the trial court on second degree murder and manslaughter, lesser included offenses of first degree murder, and in that Nebraska law requires a trial judge to instruct on first and second degree murder and manslaughter in all murder cases but precludes a trial judge from instructing on first and second degree murder and manslaughter in cases wherein the charge is felony murder, as chosen herein by the prosecutor by information and not by indictment, in violation of the Fifth Sixth, and Eighth Amendments and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.
(Filing 58, at 20.)

fenses. Respondent concedes that part (b) of the claim was fairly presented. After reviewing the state court briefs, it is clear that petitioner fairly presented part (a) of this claim when he argued that the jury instructions violated his rights under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Nebraska Supreme Court addressed this issue in *Reeves II*, 234 Neb. at 752, 453 N.W.2d 359. Part (a) of this claim was fairly presented to the state courts. However, with regard to part (c) of this claim, my review of the briefs to the Nebraska Supreme Court indicate that the claim was never fairly presented as required in a habeas case. Petitioner has failed to indicate where the claim was raised and my independent review yields no discovery beneficial to petitioner's case. Petitioner may not now raise such a claim in state courts. Part (c) of this claim is procedurally defaulted. Petitioner having failed to attempt to overcome the default, this portion of claim 20 may not be grounds for habeas relief.

**"Remand Claims" 31, 32, 36 and 38–40**

 After the parties had submitted their original briefs some questions remained about the procedural stance of the majority of petitioner's claims regarding the "resentencing" procedures employed by the Nebraska Supreme Court in *Reeves III*. These claims are 31–33, 35–41 and 43. As noted earlier, some of these claims have been deemed abandoned and may not be considered further in this action. As is relevant to this action, the claims involved are 31, 32, 36 and 38–40. I ordered the parties to submit briefs on these claims relating specifically to the questions of exhaustion, fair presentment, and any applicable exceptions to overcome procedural defaults. (Filing 100.) [10]

The exhaustion issue was troubling for these claims because of the way they arose. The case was remanded from the United States Supreme Court during the postconviction action, and the Nebraska Supreme Court resentenced petitioner. There was some question as to whether petitioner could pursue a second postconviction action to raise claims about that resentencing procedure. The parties both argue that such an avenue is unavailable to petitioner. The parties argue that all state court remedies have been exhausted. Respondent maintains the position that any claim regarding the resentencing must have been made to the Nebraska Supreme Court in a motion for rehearing. Petitioner did file a motion for rehearing, and he argues that he raised all of claims at issue

---

10. In respondent's reply brief, the following comments are made:

> At the outset we note our objection to Reeves being allowed a second opportunity to respond to issues of exhaustion and default. Reeves was clearly directed by this court to undertake that task in his original brief. He did not do so. Reeves' present argument that he did not do so when directed to because, in his perception, "issues of procedure [exhaustion?] and substantive law are inextricably linked" belies either a remarkable ignorance of the law of federal habeas corpus or a remarkably transparent attempt to excuse his prior refusal to comply with this court's orders. Now the respondent and this court are put to the task of reacting to his court-prompted "awakening" to these issues.
> We believe providing Reeves this second and unsolicited bite at the exhaustion "apple" is unwarranted and disrupts the adversarial balance of these proceedings.

(Respondent's Reply Brief, at 1–2) (brackets in original.)

Respondent fails to discuss why the court's request was "unwarranted" or how it disrupted the "adversarial balance of these proceedings." Whether a claim is exhausted or procedurally defaulted is purely a legal issue based on historic fact. No amount of adversarial advocacy may change the fact that a claim either was or was not fairly presented to the Nebraska Supreme Court. Petitioner receives no benefit from the court's order directing him to rebrief the issue. Exhaustion issues must be addressed by the court with or without briefs. Had petitioner failed to indicate how any claim was raised, the court would still have sifted through the state court briefs in an attempt to determine if and where each claim was raised. The court, not petitioner, benefits from the rebriefing.

Respondent also benefits from rebriefing. In his opposition to a number of evidentiary motions, respondent repeatedly noted the need for haste in resolving this action. Had the parties not been given the opportunity to rebrief the procedural issues, the court would have been required to go through the state court briefs page by page, searching for reference to each claim. Much time was saved by having the parties rebrief the procedural issues. That time alone warranted the court's order. I am unconvinced that any "adversarial balance" has been upset by the orders of the court. Both parties were given equal opportunities to address the issues, and both accepted the invitation.

in that motion, or that he did so in his brief to the court preceding its *Reeves III* decision.

Respondent complains at some length about petitioner's lack of specificity when explaining how certain claims were fairly presented. However, respondent often lapses into the same practice. For instance, he argues that all of the claims must have been raised in the motion for rehearing. He implicitly asserts that the claims could not be raised to the Nebraska Supreme Court in the brief preceding the *Reeves III* decision ("remand brief") but rather must have been raised in the brief in support of the motion for rehearing ("rehearing brief"). The logic of this argument is not immediately apparent to the court.[11] Whether a claim is raised in the remand brief or the rehearing brief, the Nebraska Supreme Court would be placed on notice of the legal and factual bases of the claim; fair presentment requires no more.[12]

After the United States Supreme Court remanded the case to the state court, the parties were instructed to brief the subject of remand, that being the effect of *Clemons* on the two sentences of death. In his brief on remand petitioner argued, in part, that the court had no authority to resentence him and that to do so would violate his due process rights. The remand brief was an appropriate place for petitioner to argue that the court had no authority to resentence him, or that if it did so, certain procedural protections must be employed. To the extent that arguments in the remand brief provided the legal and factual bases for the claims, they are fairly presented for habeas purposes.

Petitioner discussed claim 31 in the remand brief beginning on page 19. He argued that "[u]nder existing federal law, a defendant has a protected due process interest in state statutes and procedures for establishing and reviewing a death sentence." (Remand Brief, at 19). To support this proposition he cited *Hicks v. Oklahoma*, 447 U.S. 343, 347, 100 S.Ct. 2227, 2230, 65 L.Ed.2d 175 (1980) and *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). Claim 31 is based on the Eighth Circuit Court of Appeals decision in *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993) which was based on the considerations enunciated in *Hicks*.[13] I conclude petitioner has fairly presented this claim to the Nebraska Supreme Court.

Petitioner also discussed claim 32 in the remand brief beginning on page 19. He made the same argument regarding due process and argued that the Nebraska Constitution as well as United States Supreme Court precedent require a "two-tier" sentencing process. I conclude this argument satisfies the fair presentment requirement.

Petitioner argues that claim 36 was fairly presented by raising the argument in his rehearing brief. Petitioner assigned the claim as error on page 6 of the rehearing brief and argued the claim on page 26 of that

---

**11.** By analogy, a claim may be raised on direct appeal by addressing it in the appellate brief; that proposition is certainly unassailable. That same claim need not also be raised in the motion for rehearing to satisfy the fair presentment requirement. Respondent's position would lead to the unprecedented requirement that a claim must always be raised on rehearing, whether or not it was raised in the underlying appeal. I have found no authority to support this proposition; respondent has provided none. Thus, I reject respondent's argument that the sole method of fairly presenting petitioner's "remand claims" to the Nebraska Supreme Court was through a motion for rehearing.

**12.** The fair presentment doctrine is motivated by concerns for federal-state comity. The focus of the inquiry is *whether* the state court system has been afforded the opportunity to correct a constitutional violation before a federal court intervenes to possibly upset a state-court conviction, not *how* that opportunity was provided. So long as the highest state court has jurisdiction over the claim and the claim is clearly presented to it, the fair presentment requirement is satisfied.

**13.** Respondent argues that petitioner never discussed *Hicks* in his rehearing brief and never assigned as error the *Hicks* violation in the motion for rehearing. However, the claim was clearly raised in the remand brief wherein no "assignments of error" could be raised. Given the nature of the remand from the Supreme Court and the Nebraska Supreme Court's limited guidance on the issues to be addressed in the brief, no "assignments of error" were involved.

brief.[14] Respondent argues that pursuant to Rule 13 of the Revised Rules of the Nebraska Supreme Court "a motion for rehearing must contain specific assignments of error *and* argument relating to those assignments." (Respondent's Reply Brief to Filing 100, at 14) (emphasis added). Rule 13(C), "Contents of Motion", states, "The motion for rehearing need only notify the court that the party filing the motion asks for a rehearing." Rule 13(D) refers to the "Contents of the Brief," and requires that the rehearing brief contain assignments of error and argument supporting the assignments. Thus, petitioner need not have assigned error and argued his claims in the *motion* for rehearing, as respondent claims. Rather, he needed only assign error and argue the claim in the *rehearing brief.* Petitioner complied with the state's procedural prerequisites and argued the same factual and legal bases in the state court as he did in claim 36. The claim was fairly presented to the Nebraska Supreme Court and may be considered in this action.

In his habeas brief petitioner supported claim 38 by references to *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) and *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) and his allegations that the Nebraska Supreme Court failed to make a determination that petitioner intentionally caused suffering with respect to the death of Janet Mesner. Therefore, he argues, the court could not permissibly conclude that aggravating factor "1(d)" was present beyond a reasonable doubt. In the rehearing brief he assigned this claim as error on page 7 and argued the same claim, with the same case references, on pages 27–38. I conclude this claim was fairly presented.

Regarding claim 39, petitioner argues he presented the claim on page 35 of the rehearing brief. The sole reference in that brief to aggravating factor "1(b)" is as follows: "Reeves continues his challenge to aggravating circumstance 1(b) is [sic] vague and overbroad." (Rehearing Brief, at 25). Claim

39 and the discussion of the claim in the habeas brief raise a different concern regarding 1(b). While the rehearing brief concerned a "facial" challenge to the aggravating circumstance, claim 39 argues that the Nebraska Supreme Court applied an improper standard to the claim. That is, he argues that insufficient evidence existed to support the claim. These arguments are not the same. They raise very different concerns. I conclude claim 39 was not fairly presented to the Nebraska Supreme Court. Because petitioner failed to raise the claim when he had the opportunity, the claim is procedurally defaulted. Petitioner has made no attempt to overcome this procedural default. Therefore, claim 39 may not be grounds for habeas relief in this action.

Petitioner's habeas brief, on page 66, discusses claim 40 in terms of the supreme court's failure to consider and make factual findings regarding non-statutory mitigating factors. He argues that claim 40 was fairly presented on page 33 of the remand brief. There, he argues that the court could not permissibly resentence petitioner because the court could not consider non-statutory evidence regarding petitioner's behavior during the seven years between the original sentencing and the supreme court's resentencing. Both briefs discuss *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). Petitioner assigned this claim as error in the rehearing brief at page 2. To the extent this involves the "seven year" evidence I conclude the claim is fairly presented. However, the state briefs do not address the alleged failure to make factual findings regarding non-statutory mitigating factors. To the extent claim 40 is premised on such allegations, it was not fairly presented. Petitioner has made no attempt to overcome the procedural default. Thus, that portion of claim 40 may not be grounds for habeas relief.

Claim 44

In claim 44 petitioner makes two arguments that trial counsel provided ineffective

---

14. In that brief petitioner argued, "The Court also relied on information of other 'misconduct' which was loosely developed in the PSI, and which was not based on reliable evidence. The 'evidence' was also hearsay and not subject to confrontation, in violation of Reeves' rights under the Sixth Amendment contrary to the principles announced in *Johnson v. Mississippi,* [486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988)]."

assistance during the guilt/innocence phase. On postconviction, both in the district and supreme court, the only claims of ineffective assistance of counsel concerned the sentencing and appellate phases. Neither of the allegations raised in claim 44 were fairly presented to the Nebraska Supreme Court. *See Flieger v. Delo,* 16 F.3d 878 (8th Cir. 1994) [15]; *Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir.1993) (to fairly present a claim the petitioner must provide state supreme court the opportunity to "rule on the factual and theoretical substance of his claims.") Petitioner admits that the arguments in claim 44 were not presented in state court. (Petitioner's Brief, at 107).

Petitioner incorrectly argues that these claims are unexhausted but that resorting to available state procedures would be futile. Petitioner cannot raise either of these claims in a second postconviction action. The state's procedural rules prohibit claims which could have been presented in the first postconviction action from being raised in a second postconviction action. *See State v. Luna,* 230 Neb. 966, 434 N.W.2d 526 (1989). Further, futility is applicable to a habeas claim only when a state remedy is currently available. Futility is an exception to the exhaustion requirement, *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Smittie v. Lockhart,* 843 F.2d 295, 296 (8th Cir.1988), and cannot serve to overcome petitioner's procedural default. Futility itself cannot establish cause to excuse a procedural default. *Maynard v. Lockhart,* 981 F.2d 981, 985 (8th Cir.1992) (*citing Engle v. Isaac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982)).

After arguing that it would be futile to raise the claim in state court, petitioner states:

The court should find that petitioner's ineffective assistance of counsel claim is properly before this court in this petition and consider the claim. To do otherwise will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* [501 U.S. 722, 750–51] 111 S.Ct. 2546, 2565 [115 L.Ed.2d 640] (1991). *See also Murray v. Carrier,* 477 U.S. 478, 485 [106 S.Ct. 2639, 2643–44, 91 L.Ed.2d 397] (1986); *Wainwright v. Sykes,* 433 U.S. 72 [97 S.Ct. 2497, 53 L.Ed.2d 594] (1977); *Grooms v. Lockhart,* 919 F.2d 505, 507 (8th Cir.1990) (per curiam), *Bliss v. Lockhart,* 891 F.2d 1335, 1339 (8th Cir.1989).

(Petitioner's Brief, at 108.)

Although it is far from clear, petitioner may be attempting to argue the "fundamental miscarriage of justice" exception to the procedural default rule. In *Schlup v. Delo,* 11 F.3d 738 (8th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994), the Eighth Circuit stated that a habeas petitioner in a capital case must demonstrate that he is "actually innocent" of the crime of conviction to take advantage of the fundamental miscarriage of justice exception to defaulted claims relating to the guilt/innocence phase of a trial. *Schlup* held that circuit precedent requires application of the *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), formulation ("actual innocence") of "fundamental miscarriage of justice" to procedurally defaulted claims regarding the guilt phase of a capital case.[16] Claim 44 concerns counsel's actions during the guilt/innocence phase of petitioner's trial; therefore, petitioner must demonstrate that he is actually innocent of the murders of the Janet Mesner and Victoria Lamm.

According to *Schlup,* petitioner may demonstrate a fundamental miscarriage of justice

---

**15.** In *Flieger* the court stated,

A habeas petitioner who asserts only broadly in his state petition for relief that his counsel has been ineffective has not immunized his federal habeas claim's specific variations from the effects of the state's procedural requirements. *See Tippitt v. Lockhart,* 903 F.2d 552, 554 (8th Cir.), *cert. denied,* 498 U.S. 922, 111 S.Ct. 301, 112 L.Ed.2d 254 (1990); *Buckley v. Lockhart,* 892 F.2d 715, 719 (8th Cir.1989), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d

753 (1990). Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review.

*Flieger,* 16 F.3d at 885.

**16.** By its own terms *Sawyer* applied only to the sentencing phase of capital cases.

by demonstrating "by clear and convincing evidence that but for the constitutional error, no reasonable juror would find him" guilty of the murders of Janet Mesner and Victoria Lamm. *See Schlup* at 740, citing *Sawyer,* — U.S. at ——, 112 S.Ct. at 2523. Petitioner argues no evidence which was not presented in state court. There is no question, either now or at the trial, that petitioner broke into Mesner's house, stabbed both Mesner and Lamm and that the stab wounds caused their deaths. Further, petitioner admitted a number of times that he had raped Mesner after entering the home. Some physical evidence supported the conclusion that petitioner had raped her.

The jury considered the evidence in the record and afforded the evidence whatever weight it deemed appropriate. Considering the evidence, the jury found that petitioner had committed, or attempted to commit, a sexual assault on Janet Mesner. The weight given to the evidence by the jury is not a proper subject for this court to revisit in a habeas action. "Federal habeas, as explained in *Herrera,* does not provide a forum for the retrial of a convicted felon." *Schlup v. Delo,* 11 F.3d at 741, citing *Herrera v. Collins,* — U.S. ——, —— – ——, 113 S.Ct. 853, 860–61, 122 L.Ed.2d 203 (1993). Petitioner has failed to demonstrate that he is actually innocent of the murders of Janet Mesner and Victoria Lamm. Thus, he has failed to overcome the procedural default which bars consideration of claim 44. This claim cannot be grounds for habeas relief in this action.

## IV. TRIAL CLAIMS

The remainder of the claims before the court may now be considered on their merits. I shall discuss the claims, for the most part, individually, beginning with those arguing violations of petitioner's constitutional rights during the guilt/innocence phase of the trial. Those claims are 17, 18, 20, 21, 22 and 23. Following those claims, I shall discuss claims regarding the resentencing procedures employed by the Nebraska Supreme Court in *Reeves III.*

*Claim 17:* Prosecutor As A Witness

■ Petitioner alleges his due process rights were violated when the prosecuting attorney, Ronald Lahners, refused to recuse himself from the case. Lahners participated in an interrogation of petitioner the morning after the two killings. Petitioner moved for Lahners' recusal because Lahners would also be a witness. The trial judge directed Lahners to seek an opinion from the Nebraska State Bar Association as to whether any ethical duties would be breached by representing the state. Lahners then indicated that the state would not present evidence of the interrogations during its case-in-chief. The motion for recusal was then denied by the trial court. The state did not present the evidence in its case-in-chief and did not call Lahners as a witness. However, the defense did call Lahners as a witness. Petitioner alleges the failure to recuse deprived him of a fair trial.

A similar claim was raised, and denied, in *Nassar v. Sissel,* 792 F.2d 119 (8th Cir.1986). In *Nassar* the court stated,

Appellant further asserts that a new trial should be granted for failure of County Attorney, Monty Fisher, to withdraw as prosecutor when he learned that he would be called as a defense witness. Appellant bases this claim on Canon 5, Disciplinary Rule 5–102 of the Iowa Code of Professional Responsibility. Nassar claims that failure of the County Attorney to withdraw resulted in the denial of his right to a fair trial. However, the section of the Iowa Code of Professional Responsibility which appellant cites only requires an attorney to withdraw if he will be called as a witness on behalf of his client. When a prosecutor is called to testify for the defense, not the prosecution, he is not necessarily required to withdraw. *Chessman v. Teets,* 239 F.2d 205, 214 (9th Cir.1956), *vacated on other grounds,* 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957). Appellant has not shown any constitutional violations in this regard. There is no duty to withdraw under the circumstances of this case and

therefore, appellant's claim is insupportable.

*Nassar v. Sissel,* 792 F.2d at 122.

Petitioner cited to no authority whatsoever in the habeas brief in support of this claim. He does not allege that Lahners' conduct violated any disciplinary rule, let alone the Constitution. The court has found no authority for such a proposition. Because petitioner has failed to demonstrate that the failure of the prosecuting attorney to recuse himself resulted in a constitutional violation, this claim must be denied.

*Claim 18:* Interfering With Trial Testimony

In claim 18 petitioner alleges his due process rights were violated when the trial judge interfered with the testimony of a defense witness. Petitioner called as a witness Dr. Ronald Siegal, a psychopharmacologist and psychologist, to testify about the psychological effects of mixing peyote and alcohol. After completing foundational questioning, petitioner's attorney began to inquire about the nature of peyote and its qualities as a drug. The witness' answers were twice interrupted by objections that the answers exceeded the scope of the questions; both objections were sustained. (Bill of Exceptions, at 1516:18–21, 1518:12–14). The prosecutor then complained in a sidebar that the witness was continuing to exceed the scope of the questions. (*Id.* at 1518:25–1519:10).

The witness was asked one more question and began answering the question. After some testimony, the following exchange took place:

MR. LACEY: Your Honor, I'm going to object again. He's going way beyond the question asked.

THE COURT: Sustained. The last portion—

MR. LACEY: Move to strike all that of his answer that doesn't pertain to the question asked.

THE COURT: And the jury is instructed to disregard the same. The witness will listen to the question. Will you look at me, sir? The witness will listen to the question and answer only the question. Don't go beyond that.

THE WITNESS: Your Honor, may I ask for a quick clarification from the Court? I was asked the question of how—

MR. LACEY: Your Honor, may we—

THE COURT: The Court has ruled, sir.

THE WITNESS: Okay.

MR. LAHNERS: Your Honor, may we do this outside the presence of the jury if the witness needs to be instructed?

THE COURT: Yes. We can do that. I'll see counsel and the reporter and the witness in chambers.

(In chambers, outside of the presence of the jury.)

THE COURT: You asked for a point of clarification.

THE WITNESS: Yes, Your Honor. The question as I heard it was how is peyote used. Any my answer was it was used in the 2 to 30 buttons.

THE COURT: I think the question was, as the Court recalls, how is it prepared?

THE WITNESS: Yes, prepared with two—

THE COURT: The question was how was it prepared. And you are anticipating additional questions. Your lawyer will have an opportunity to ask additional questions in that regard, sir.

THE WITNESS: That's how it's prepared, with 2 buttons or 30 buttons. That is the form of preparation. You would not necessarily prepare—

THE COURT: I'm not going to argue with you about this. I'm telling you to listen to the question and answer only the question. Your lawyers or the lawyers for the defense will have an opportunity to expand upon it.

MR. GOOS: Your Honor, if I could say, I thought that I had asked the question how is it prepared and used.

THE COURT: I don't believe use was on there. At least if it was, the Court did not hear it.

MR. GOOS: I wonder if maybe Kathy could go back to that.

THE COURT: Yes.

COURT REPORTER: (Reading) "Question. Doctor, let me go back a moment. I

think you touched on this, but how is peyote normally prepared and used?"

THE COURT: You are correct, Mr. Goos. His answer was within the bounds of the question. I think the problem is that we're getting two questions in on this. And I think that if we go at it one question at a time it will go a little bit faster and it will be more understandable to the jury.

THE WITNESS: Fine.

(Bill of Exceptions, at 1520:1–1522:6.) After returning to the courtroom the court stated,

The Court, upon reconsideration, reinstates the testimony that it struck just before the Court left the courtroom with the witness, the defendant and the court reporter and counsel. And that is in evidence at this time.

(*Id.* at 1523:8–13.)

Petitioner argues the court denied him a fair trial by interfering in the witness' testimony and stating, "The witness will listen to the question. Will you look at me, sir? The witness will listen to the question and answer only the question." Essentially, petitioner alleges the judge's misconduct denied him the right to a fair trial and due process of law. As the court of appeals explained in *Nassar,*

[Petitioner] is entitled, under due process, to a "neutral and detached judge." *Ward v. Village of Monroeville,* 409 U.S. 57, 62, 93 S.Ct. 80, 84, 34 L.Ed.2d 267 (1972). A review of this type of claim requires examining the trial court's actions in the context of the entire trial to see if those actions were sufficiently prejudicial to violate due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431, 436 (1974).

*Nassar,* 792 F.2d at 122.

I cannot conclude that this lone remark when viewed, not in isolation, but in the context of the entire trial, deprived petitioner of a fair trial. The witness, who was very familiar with legal proceedings from his numerous appearances as an expert witness, continually gave answers beyond the scope of the questions, and the answers caused objections. After three objections were sustained the judge admonished the witness to answer

the questions. Other than this remark petitioner makes no allegations that the judge made prejudicial comments to the witness or about the witness' testimony.

In the context of the lengthy trial, this incident did not deprive petitioner of a fair trial. After the incident the witness was able to testify as to his opinions and freely answer questions. The judge did not attempt to circumscribe the witness' testimony other than to require that it be responsive to questions. The judge did not intimate to the jury that the substance of the testimony was less credible than that given by the state's witnesses merely because the witness was admonished by the court. Further, the judge went to great lengths throughout the trial to assure fairness to both sides, and the record amply demonstrates that he met that objective in every respect. Finally, the judge gave a cautionary instruction that the jury was to decide the case on the evidence and not to consider their perceptions of the judge's reactions to evidence. Petitioner has failed to demonstrate that the judge's comments prejudiced petitioner's case to the extent that a due process violation occurred. This claim is without merit.

*Claims 20 and 21:* Lesser Included Offenses

As indicated previously, claim 20 contains two remaining subparts: (a) and (b). In part (a) petitioner argues the jury instructions violated his rights as set forth in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). This part is essentially identical to claim 21. In part (b) of claim 20, petitioner argues his he was denied the right to instructions on lesser included offenses in violation *Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). I shall address these arguments individually.

*Claim 20(a): Sandstrom v. Montana*

In claim 21 and part (a) of claim 20, petitioner argues that the felony murder rule, facially and applied to his case by the jury instructions, created a presumption that he had the intent to kill in violation of *Sandstrom v. Montana, supra. Sandstrom* "simply held that an instruction which creates a presumption of fact violates due process if it

relieves the State of its burden of proving all of the elements of the offense charged beyond a reasonable doubt." *Gilmore v. Taylor,* —— U.S. ——, ——, 113 S.Ct. 2112, 2118, 124 L.Ed.2d 306 (1993). Rejecting petitioner's argument, the Nebraska Supreme Court stated,

> In the present case the jury was instructed with respect to felony murder only. In Nebraska, no specific intention is required to constitute felony murder other than the intent to do the act which constitutes the felony during which the murder occurred. *State v. Perkins,* 219 Neb. 491 [364 N.W.2d 20] (1985) There need not be an intent to kill in felony murder, only an intent to commit the underlying felony. *State v. Bradley,* 210 Neb. 882 [317 N.W.2d 99] (1982). Here, the turpitude involved in the sexual assault takes the place of intent to kill or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intention required for the assault. *State v. Reeves,* 216 Neb. 206 [344 N.W.2d 433] (1984). The State is not relieved of its burden to prove that appellant engaged in the underlying felony with the requisite mens rea. The State having proved the intent, the felony murder doctrine merely imputes the intent incident to the underlying felony to the killing, which is committed in the perpetration or attempted perpetration of any predicate offenses set forth in the statute.

*Reeves II,* 234 Neb. at 752, 453 N.W.2d 359.

The jury was not instructed that the state must prove beyond a reasonable doubt that petitioner intended to kill Janet Mesner or Victoria Lamm. However, *Sandstrom* is not implicated by such an omission because intent to kill is not an element of felony murder in Nebraska. The jury was properly instructed on the elements of felony murder; the state was required to prove beyond a reasonable doubt all of the elements of that offense for both deaths. The jury instructions properly described state law and did not presume the existence of any element of the offense.

Petitioner appears to challenge the constitutionality of sentencing a person to death on the basis of a statute which does not require proof of the intent to kill. Concededly, the state never attempted to prove that petitioner had the intent to kill either Janet Mesner or Victoria Lamm. Petitioner argues that he may not be sentenced to death unless the state proves beyond a reasonable doubt that he had that intent. For this proposition he relies on *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Discussing *Enmund* and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), which clarified the holding in *Enmund,* the Eighth Circuit Court of Appeals recently stated:

> Before a defendant can be sentenced to death, our Constitution requires that he be guilty of a certain degree of culpable conduct. In *Enmund v. Florida, supra,* and *Tison v. Arizona, supra,* the Supreme Court elaborated on the necessary mental state in the felony-murder context. In *Enmund,* the Court held that states could not impose the death penalty on an accomplice to a felony murder who "[did] not himself kill, attempt to kill, or intend that a killing take place or that lethal force [would] be employed." *Enmund v. Florida, supra,* 458 U.S. at 797, 102 S.Ct. at 3377. The defendant in *Enmund* was the driver of a getaway car whose codefendants had entered a house to commit an armed robbery. Those codefendants shot and killed several people after one of the residents fired on them. *Id.* at 784, 102 S.Ct. at 3370. Because Enmund was not present when the shots were fired, and the evidence did not show that he had any intent to kill or use lethal force, the Court held that Enmund's death sentence was unconstitutional.

> The court further elaborated on the principle of proportionality in felony-murder sentencing in *Tison v. Arizona, supra.* In *Tison,* the Court stressed that two types of cases occur at opposite ends of the felony-murder spectrum. At one end of the spectrum are "minor actor[s] in an armed robbery, not on the scene, who neither intended to kill nor [were] found to have had any culpable mental state," while at the other are felony murders "who actually killed, attempted to kill, or intended to kill." 481

U.S. at 149–50, 107 S.Ct. at 1684. *Tison* addressed those cases in which the felony-murder defendants played an intermediate role in the murder. The Court defined that role as major participation in the crimes combined with a mental state of reckless indifference to human life.... Although neither [defendant] specifically intended to kill the victims, nor did either actually fire the fatal shots, the Supreme Court found that the death penalty could be constitutionally applied to them.

*Fairchild v. Norris,* 21 F.3d 799, 802 (8th Cir.1994).

As stated in *Fairchild,* the Court in *Tison* discussed two ends of the felony-murder spectrum. The most culpable defendants are those "who actually killed, attempted to kill, or intended to kill." *Tison v. Arizona,* 481 U.S. at 149–50, 107 S.Ct. at 1684. Petitioner is solidly on this end of the spectrum. At trial, petitioner made a judicial admission that he stabbed both women and that the stab wounds caused their deaths. He was not acting as an accomplice to the person who did the killings. Petitioner actually killed Janet Mesner and Victoria Lamm. Thus, neither *Enmund* or *Tison* supports a conclusion that petitioner's culpability in the double murders of these women was insufficient under the Constitution to allow the imposition of a sentence of death. Therefore, the fact that the felony murder statute does not require the intent to kill, and the failure of the trial court to instruct the jury that it must determine that petitioner had such an intent, does not render petitioner's convictions or sentences unconstitutional. Therefore, claim 21 and part (a) of claim 20 are without merit.

*Claim 20(b): Beck v. Alabama*

Petitioner alleges the district court failed to instruct the jury on second degree murder and manslaughter. He correctly notes that due process requires the trial court in a capital case to instruct the jury on lesser included offenses supported by the evidence. *Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367 (1982); *Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980). Petitioner was tried solely on felony murder charges. On petitioner's direct appeal the Nebraska Supreme Court held that under Nebraska law second degree murder and manslaughter are not lesser included offenses of felony murder. *Reeves I,* 216 Neb. at 217, 344 N.W.2d 433. This construction of state law is not challenged on any basis other than petitioner's argument that second degree murder and manslaughter are lesser included offenses of felony murder, notwithstanding the Nebraska Supreme Court's holding to the contrary. Both *Beck* and *Hopper* were premised on state courts' findings that the claimed lesser-included offenses were in fact lesser-included offenses under applicable state law.[17] This distinction makes them inapplicable to petitioner's case. Thus, *Beck* and *Hopper* do not require such instructions be given. *Cf. Blair v. Armontrout,* 916 F.2d 1310, 1326–30 (8th Cir.1990) (rejecting argument that Missouri Supreme Court's rulings on first degree murder as a lesser included offense of capital murder were inconsistent and deprived petitioner of equal protection, noting that federal courts may not review state court's "decision resting on an adequate foundation of state substantive law," quoting *Wainwright v. Sykes,* 433 U.S. 72, 81, 97 S.Ct. 2497, 2503–04, 53 L.Ed.2d 594 (1977)), *cert. denied,* 502 U.S. 825, 112 S.Ct. 89, 116 L.Ed.2d 62 (1991).

The Ninth Circuit Court of Appeals addressed a claim very similar to petitioner's in *Greenawalt v. Ricketts,* 943 F.2d 1020 (9th Cir.1991), *cert. denied,* ―― U.S. ――, 113 S.Ct. 252, 121 L.Ed.2d 184 (1992). The court reasoned,

Greenawalt contends that the trial court erred by failing to instruct the jury on second degree murder or any lesser in-

17. Beck argued that he did not kill the victim or intend his death, and was therefore entitled to an instruction on the lesser included offense of felony murder under Alabama law. *See Beck,* 447 U.S. at 629–30, 100 S.Ct. at 3385–86. Hopper raised the same argument, which the Court rejected on the basis that there was insufficient evidence supporting a felony murder charge in light of Hopper's repeated testimony that he had killed the victim, that he intended to kill him, and that he would kill again under similar circumstances. *See Hopper,* 456 U.S. at 612, 102 S.Ct. at 2053.

cluded offenses. He correctly observes that due process requires such an instruction when the evidence warrants it. *Beck v. Alabama,* 447 U.S. 625, 636–37, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). He fails to point out the Supreme Court's subsequent clarification that "[w]here no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process. *Beck* does not require that result." *Spaziano v. Florida,* 468 U.S. 447, 455, 104 S.Ct. 3154, 3159, 82 L.Ed.2d 340 (1984).

Greenawalt was tried solely for felony murder, a crime for which Arizona law recognizes no lesser included offense. *Greenawalt v. Ricketts,* 943 F.2d at 1029 (citing *State v. Greenawalt,* 128 Ariz. 150, 168, 624 P.2d 828, 846 (en banc)), *cert. denied,* 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). The court refused to require instructions on other offenses which were not lesser includeds. *Id.*

Petitioner was not entitled to jury instructions on second degree murder or manslaughter, either by state law or the Constitution. Therefore, part (b) of claim 20 is without merit.

*Claim 22:* Diminished Capacity

In claim 22 petitioner alleges the trial court refused to instruct the jury on diminished capacity in violation of petitioner's due process rights. Petitioner's brief makes only fleeting reference to this claim and fails to argue the basis for this claim. Supporting the claim in the amended petition, the following facts were alleged:

The Petitioner's expert witnesses testified that Petitioner's ability to form intent was diminished because of mental illness and intoxication. (1552:13–1553:4; 1618:17–1619:17) The Petitioner presented evidence at trial that his mental capacity to form any of the specific mental states that are essential elements of the crimes charged was reduced and impaired by the synergistic effect of the peyote and alcohol he had consumed and under which effects he was when the events that gave rise to the charges occurred. (BE 1535:15–1536:19). The trial court's denial of Peti-

tioner's requested diminished capacity instruction effectively excluded this evidence from the jury's consideration. Petitioner's requested instruction of diminished capacity was refused by the trial court, even though diminished capacity is a defense to a specific intent crime and was recognized as such in the State of Nebraska. (T224).

(Filing 58, at 24–24.)

In *Reeves I* the court rejected this claim, stating:

The overwhelming majority of the defendant's evidence contained in the vast record centered on defendant's lack of requisite intent due to voluntary drug and/or alcohol intoxication and defendant's insanity. Only a minute portion of the evidence touched on defendant's lack of intent due to other factors. The court is not required to give instructions where there is not sufficient evidence to prove the facts claimed. *State v. Scott,* 212 Neb. 625 [324 N.W.2d 670] (1982); *State v. Prim,* 201 Neb. 279 [267 N.W.2d 193] (1978). The trial court did instruct the jury on defendant's theories of lack of intent due to intoxication and insanity. As stated in *State v. Bartholomew,* 212 Neb. 270 [322 N.W.2d 432] (1982): " 'All the instructions must be read together and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error.' " We find the jury was properly instructed.

*Reeves I,* 216 Neb. at 218, 344 N.W.2d 433.

The trial court did instruct the jury on the voluntary intoxication and insanity defenses. However, petitioner requested that the following instruction on diminished capacity be given:

You must also consider defendant's claimed diminished mental capacity and take all the evidence into consideration in determining whether defendant had the mental capacity to form any of the specific mental states that are essential elements of murder in the first degree and sexual assault in the first degree.

In this respect you must consider all the evidence, or lack of evidence, to determine

whether the defendant had such reduced mental capacity (whether caused by mental illness, mental defect, intoxication, mental retardation, or a combination thereof,) that he could not form such mental state.

If you have a reasonable doubt as to whether defendant was capable of forming such a mental state, you must find the absence of such essential element.

(Transcript, at 224). The court refused to give that instruction, but it gave the following instruction regarding intoxication:

Ordinarily, voluntary drug intoxication or voluntary alcohol intoxication or a combination thereof is not justification or excuse for a crime; but excessive intoxication by which a person is wholly deprived of reason may prevent having the intent charged.

If you find that the defendant was intoxicated, the fact should be considered by you, *together with all the facts and circumstances in evidence,* for the purpose of determining whether or not you have a reasonable doubt that defendant was at the time in question capable of having the intent charged in regard to the alleged perpetration of or attempt to perpetrate a sexual assault in the first degree.

(Id. at 257) (emphasis added). Again, the intent necessary was not the intent to kill; rather, the intent issue was directed toward the sexual assault or attempted sexual assault.

The Eighth Circuit Court of Appeals has recently stated:

[U]nder the case law related to habeas proceedings, the trial court's refusal to give a requested instruction must have "amount[ed] to a fundamental defect which inherently result[ed] in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."

*Closs v. Leapley,* 18 F.3d 574, 579 (8th Cir. 1994) (citing *Frey v. Leapley,* 931 F.2d 1253, 1255 (8th Cir.1991)) (internal quotations and other cites omitted).

After reviewing the record I conclude that the trial court's refusal to instruct the jury on diminished capacity did not violate petitioner's due process rights. Petitioner's defense was based on the insanity defense and the assertion that he was so intoxicated that he was incapable of forming the requisite intent to support a conviction for sexual assault or attempted sexual assault. The trial court instructed on both of those defenses. The experts who testified for petitioner did so either on the subject of sanity or intoxication. In the closing argument petitioner's attorneys discussed the insanity defense and the effect of petitioner's intoxication on his ability to form any necessary intent. Any evidence or argument presented about issues relating to diminished capacity were closely related to the primary defense issues of intoxication and insanity.

The jury instructions required that the state prove beyond a reasonable doubt that petitioner had the requisite intent to commit, or attempt to commit, a sexual assault on Janet Mesner. The court instructed the jury that petitioner may not have been able to form that intent because of the influences of alcohol and/or peyote. The jury considered the evidence of petitioner's mental state and found beyond a reasonable doubt that petitioner had formed the requisite intent. The court adequately instructed the jury that petitioner's ability to form that mental state may have been affected by alcohol or drugs—or by any other factors shown by the evidence, an obvious reference to defendant's evidence on insanity. This was the crux of the rejected diminished capacity instruction. In any event, petitioner certainly has not shown that the court's refusal to give the instruction "amount[ed] to a fundamental defect which inherently result[ed] in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Closs, supra.* Claim 22 is without merit.

*Claim 23:* Closing Arguments

In claim 23 petitioner complains about a statement made by Lahners during the rebuttal argument and the trial court's failure to give a curative instruction. Although both claims are related to the insanity defense, I shall address the claims individually.

### 1. *Statement in Rebuttal Arguments*

The closing argument for the state was presented by Gary Lacey. After he finished, Dennis Keefe spoke for the defense claiming the state had failed to prove that petitioner was sane beyond a reasonable doubt. The defense had admitted that petitioner had caused the deaths of Janet Mesner and Victoria Lamm. Petitioner relied on multiple theories of defense, insanity being argued by Keefe. Richard Goos argued next for the defense. He argued that the state had failed to prove beyond a reasonable doubt that petitioner had committed a sexual assault or attempted sexual assault, the felony underlying the felony murder charges. He also argued insanity as well as excessive intoxication.

After Goos concluded his argument, Lahners gave the state's rebuttal. He noted, as had Goos, that the petitioner made a "judicial admission" that he had stabbed both women and caused their deaths. Lahners argued that after that admission was taken into account, the state needed to prove only two things: that petitioner was sane and that the women had died during the commission or attempted commission of a sexual assault. (Bill of Exceptions, at 2223:24–2224:5). After giving further argument, Lahners made a statement which petitioner argues deprived him of the right to a fair trial. To gather the full context of Lahners' statement, it is necessary to quote from the rebuttal argument at some length:

> Now, ladies and gentlemen, there are lots of things that I would really like to talk to you about. But I don't have time, very frankly, to talk to you about all those things. We're trying to digest, if you will, 22 days of testimony into 2 hours of which I get 48 minutes. But I would like to bring some things to your attention that there have been some questions about. And then I'd like to tell you very frankly how this whole thing happened. And defense counsel wants us to tell you what happened during that supposed hour and a half in that bedroom. I think the evidence shows that. And the evidence will be shown to you to show that.

> But before I do that, let's talk about a couple of things that defense counsel says was not very logical on the part of this defendant. He says, "Would a man covered with blood walk down the street covered with blood with his fly open?" Well, where's he going to go. Is he going to go into a filling station in front of an attendant and wash up? Is he going to do that? Where's he going? Why is he crossing O Street? He's got to get to the other side. How else can he get home to Vine Street where his friend lives if he didn't cross O Street. So is it a logical step to cross O Street?

> Maybe you don't like to do it under those circumstances. But what else are you going to do. And if you were running away from just having killed two people, how careful would you be about doing all of those things. You'd be doing exactly what this defendant did. You're getting as far away from there as fast as you could. He went just about three miles, ladies and gentlemen, between the time that Janet Mesner made this phone call and he was arrested. That's moving right along when you don't have an automobile.

> I would also point out to you that when you have listened to defense counsel during the arguments, they have asked you to do something. They have said, "Couldn't it have happened? Isn't it possible? Isn't there a chance that—" in other words, what they're asking this jury to do is speculate on the evidence. And what I'd ask this jury to do would be to look at the evidence and then apply the evidence to the facts in this case to determine whether or not the elements have been proven. *The State doesn't prove this case beyond a reasonable doubt, then the State shouldn't win and this defendant should walk out of this courtroom a free man.*

> But here's the evidence, ladies and gentlemen. And if you really want to know how this case happened, and I may not be a great expert in this particular area, but put together the logic of this.

(Bill of Exceptions, at 2237:15–2239:9) (emphasis added). Lahners then went on to discuss the state's theory of how petitioner

committed the crimes. The discussion immediately following the quoted section did not discuss the insanity defense. After the argument petitioner moved for a mistrial and requested an instruction informing the jury of the effects of a verdict of not guilty by reason of insanity. The trial court held that the emphasized language was referring to a verdict of not guilty, and not to a verdict of not guilty by reason of insanity.

Petitioner argues that the underlined section of the argument deprived petitioner of a fair trial because it mischaracterized the insanity defense and preyed upon the fears of the jury. Petitioner argues that, if found not guilty by reason of insanity, he would not have been a free man, as Lahners argued. In *Reeves I* the court stated, "Taken in context, the prosecutor's statement was not so prejudicial as to warrant a mistrial." *Reeves I*, 216 Neb. at 220, 344 N.W.2d 433.

In a habeas action the "relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Pickens v. Lockhart*, 4 F.3d 1446, 1453 (8th Cir.1993), *cert. denied*, ––– U.S. –––, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Petitioner must demonstrate a reasonable probability that absent the alleged improper statements the result of the trial would have been different. *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir.), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

A similar claim was raised in *Schlup v. Armontrout*, 941 F.2d 631 (8th Cir.1991), *cert. denied*, ––– U.S. –––, 112 S.Ct. 1273, 117 L.Ed.2d 499 (1992). In *Schlup* the petitioner argued that he received ineffective assistance when his trial attorney failed to object to a statement made by the prosecutor in his closing argument. The court stated:

> Schlup has not established prejudice from the state's closing argument at the penalty phase. The state declared that persons have a right to be free from fear and suggested that Schlup should be sentenced

to death because he may otherwise eventually be released into society. Schlup contends that the argument was intended to inflame the passion of the jury and impair the jury's reason, and that trial counsel should have objected to the argument and made a request for a curative instruction. Schlup was not prejudiced by the closing argument because Schlup's sentence was not imposed under the influence of passion. First, the Missouri Supreme Court has found "no indication that the death sentence was imposed under the influence of passion, prejudice, or any other contributing factor." [*State v. Schlup*, 724 S.W.2d 236, 242 (Mo.), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987).] The state court's factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d).... Second, irrespective of the state court's findings, no prejudice occurred because the state's actions were not so egregious that the closing argument rendered Schlup's trial fundamentally unfair.

*Schlup v. Armontrout*, 941 F.2d at 640–41, citing *Donnelly v. DeChristoforo*, 416 U.S. at 647, 94 S.Ct. at 1873; *Hamilton v. Nix*, 809 F.2d at 470.

The comments in *Schlup* appear to be more egregious than those in petitioner's trial. Lahners' comments, when taken in the context of a finding of not guilty (as opposed to not guilty by reason of insanity) are completely correct. The record supports the trial court's determination that the comments were made in that context. Lahners was not discussing the insanity defense when he made the comment; he was speaking about the elements of the case generally. Petitioner forwarded a defense of not guilty as well as not guilty by reason of insanity. Lahners addressed both defenses during the rebuttal, but he was not addressing the insanity defense when he made the challenged comments.

In *Schlup* the court's description of the prosecutor's comments leaves an impression that the prosecutor was attempting to inflame the jury. No such implication appears from the record of Lahners' rebuttal. He made a single reference to petitioner being

released if the state failed to prove its case. He did not follow-up on the comment and attempt to make an issue of it. Nothing in the record indicates that he attempted to inflame the jury, nor does the record provide even a suggestion that petitioner was prejudiced by the comment. Petitioner bears the burden in a habeas case of demonstrating a reasonable probability that the result of his trial would have been different absent the prosecutor's statements. *Schlup*, 941 F.2d at 641; *Hamilton*, 809 F.2d at 470. He has failed to make such a showing. Therefore, this argument is without merit.

2. *Insanity Instruction*

 In a second part to this claim petitioner argues that his due process rights were violated when the trial judge refused to submit to the jury petitioner's proposed instruction explaining the effect of a verdict of not guilty by reason of insanity. The Eighth Circuit Court of Appeals rejected this type of claim in *Pope v. United States*, 372 F.2d 710 (8th Cir.1967), *vacated on other grounds*, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968), stating, "we ... find no error and see no reason why we should depart from the long-established principle that, in the absence of some specific statutory provision, a defendant's disposition is not a matter for the jury's concern." *Id.* at 731. Nebraska has no such statutory provision as evidenced by the court's denial of this claim in *Reeves I*.[18]

Generally it is inappropriate to instruct the jury on the sentence the defendant might receive because doing so would "tend to draw the attention of the jury away from their chief function as ... judges of the facts." *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir.1974) (quoting *Pope v. United States*, 298 F.2d 507, 508 (5th Cir.1962), *cert. denied*, 381 U.S. 941, 85 S.Ct. 1776, 14 L.Ed.2d 704 (1965)). Moreover, the dicta of *Shannon v. United States*, —— U.S. ——, ——, 114 S.Ct. 2419, 2428, 129 L.Ed.2d 459 (1994)[19] is inapplicable here because of the

---

**18.** The court stated,

The defendant assigns as error the trial court's refusal to instruct the jury with regard to the consequences of an acquittal by reason of insanity. In *State v. Reitenbaugh*, 204 Neb. 583, 284 N.W.2d 19 (1979), and *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979), we held that it was not error for the trial court to refuse to instruct a jury in a criminal case of the consequences of a verdict of not guilty by reason of insanity. Our reason for so holding was that, " 'in the absence of some specific statutory provision, a defendant's disposition is not a matter for the jury's concern.' " *Reitenbaugh, supra*, 204 Neb. at 585, 284 N.W.2d at 20.

*Reeves I*, 216 Neb. at 218–19, 344 N.W.2d 433.

**19.** In *Shannon* the defendant pursued a "not guilty by reason of insanity" (NGI) defense at trial. He argued that the court was required to instruct the jury that if found NGI he would be subject to a federal commitment process. The trial court denied the request. When the case eventually reached the Supreme Court, the defendant argued that the Court should require such an instruction on two bases: (1) The Insanity Defense Reform Act of 1984 (IDRA), or (2) the Court's supervisory powers.

The Court held that IDRA provided no such authority. The Court also refused to create a general rule requiring such an instruction under its "supervisory power over the federal courts." The Court noted that, in Shannon's case, the jury had been instructed to apply the law "regardless of the consequence" and that punishment "should not enter your consideration or discussion." The Court stated that the existence of the NGI verdict option was "no reason to depart from 'the almost invariable assumption of the law that jurors follow their instructions.' " *Shannon*, —— U.S. at ——, 114 S.Ct. at 2427 (quoting *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1706–07, 95 L.Ed.2d 176 (1987)). Although the Court refused to create the general rule that Shannon had requested, it made a statement in dicta which is relevant to the present action:

Although we conclude that IDRA does not require an instruction concerning the consequences of an NGI verdict, and that such an instruction is not to be given as a matter of general practice, we recognize that an instruction of some form may be necessary under certain limited circumstances. If, for example, a witness or prosecutor states in the presence of the jury that a particular defendant would "go free" if found NGI, it may be necessary for the district court to intervene with an instruction to counter such a misstatement. The appropriate response, of course, will vary as is necessary to remedy the specific misstatement or error. We note this possibility merely so that our decision will not be misunderstood as an absolute prohibition on instructing the jury with regard to the consequences on an NGI verdict. Our observations in this regard are not applicable to Shannon's situation, however, for there is no indication that any improper statement was made in the presence of the jury during his trial.

*Id.* —— U.S. at ——, 114 S.Ct. at 2428.

Nebraska state courts' finding of fact (supported by the record) that prosecutor Lahners was referring to a not guilty verdict—not the insanity defense—in his closing argument. In the absence of evidence suggesting that this factual finding is erroneous or lacks support in the record, I am bound by it. *See* 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Graham v. Solem,* 728 F.2d 1533 (8th Cir.), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). This claim has no merit.

## V. REMAND AND SENTENCING CLAIMS

*Claims 31 and 32:* Sentencing Liberty Interest

Petitioner alleges that the Nebraska Supreme Court violated his due process rights by resentencing him on remand. This argument is based on *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the case cited by the United States Supreme Court when it remanded the action, and *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). In *Clemons* the state district court sentenced the defendant to death, but in doing so, utilized an aggravating factor which was determined to be constitutionally invalid. On direct appeal the Mississippi Supreme Court held that the death penalty was properly imposed even without consideration of that aggravating factor. Clemons argued to the United States Supreme Court that the appellate reweighing violated his Eighth Amendment and due process rights.

The Court determined, first, that no constitutional provision prohibits an appellate court from upholding a death sentence imposed by a fact-finder which relied in part on an invalid aggravating circumstance. *Id.* 494 U.S. at 744–46, 110 S.Ct. at 1446–47. Next, the Court determined that Mississippi law created no liberty interest under the Fourteenth Amendment in having the jury determine the effect of the invalidation of the aggravating circumstance. *Id.* at 746–47, 110 S.Ct. at 1447–48. Finally, the Court rejected the claim that the Eighth Amendment prohibits an appellate court from reweighing the

aggravating and mitigating circumstances because that court is unable to fully consider and give effect to the mitigating evidence presented to the finder of fact. *Id.* at 748–750, 110 S.Ct. at 1448–49.

Considering the effect of *Clemons* in petitioner's case, the Nebraska Supreme Court determined that *Clemons*

> sets forth three options available to appellate courts in death penalty cases where there has been an error concerning the trial court's finding of aggravating and/or mitigating circumstances. First, the court may analyze and reweigh the aggravating and mitigating circumstances itself to determine whether or not the scale tips in favor of the death penalty. Second, the court may conduct a harmless error analysis to determine whether or not error by the district court in finding aggravating or mitigating circumstances has prejudiced the rights of the defendant. Third, the court may remand the cause for a new sentencing hearing.

*Reeves III,* 239 Neb. at 423, 476 N.W.2d 829. The Nebraska Supreme Court then analyzed petitioner's claims and concluded that the district court had committed error in sentencing petitioner and that the error was not harmless. *Id.* at 427–28, 476 N.W.2d 829. The court chose to independently reweigh the circumstances rather than remand the cause for a new hearing.

> We do not consider the error of the district court harmless beyond a reasonable doubt. We are unable to determine that the weighing analysis in the minds of the three judge-panel would have been the same if mitigating circumstances (2)(g) had been factored into the balance. We do not know what weight the judges may have given this circumstance if they had found it to exist. Therefore, we find it necessary to independently reweigh all the aggravating and mitigating circumstances to determine if the death penalty was an appropriate sentence in this case.

*Reeves III,* 239 Neb. at 428, 476 N.W.2d 829. While the court did discuss death penalty cases it had decided after *Clemons, Id.* 239 Neb. at 424–26, 476 N.W.2d 829, it did not

discuss the question of whether state law provided petitioner with a liberty interest in a two-tiered sentencing procedure.

The Eighth Circuit Court of Appeals recently considered the impact of *Clemons* on a Nebraska death penalty case. *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993). In *Rust* the state district court "probably" determined the existence of aggravating factors by a standard less demanding than "beyond a reasonable doubt." *Id.* at 1492.[20] However, the state supreme court determined that the same factors determined to be present by the district court had been proven "beyond a reasonable doubt." *Id.* The Eighth Circuit determined that the petitioner's due process rights had been violated by the supreme court's failure to remand the case to the district court for resentencing using the proper standard.

Explaining Nebraska procedure as it pertained to the basis for its decision the Court of Appeals stated,

Nebraska law requires the sentencing judge or judges to consider both aggravating and mitigating circumstances. *Neb. Rev.Stat.* § 29–2522 (1973)…. Either the judge who presided at trial or a panel of three judges, usually including the judge who presided at trial, will determine the proper sentence. *Neb.Rev.Stat.* § 29–2520 (1975). The Nebraska Supreme Court automatically reviews all capital punishment cases. *Neb.Rev.Stat.* § 29–2525 (1975).

Therefore, Rust had a statutory right to: (1) have his trial judge or a three-judge panel including his trial judge consider aggravating circumstances based on facts proven beyond a reasonable doubt and to sentence him based on those findings; and (2) have the determination of that sentencing panel reviewed in the Nebraska Supreme Court. While created by state law, these are not "procedural right[s] of exclusively state concern," they are liberty interests protected by the Fourteenth Amendment. *See Hicks v. Oklahoma*, 447

U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). When Nebraska, without due process, deprived Rust of these rights, it violated rights guaranteed him under the United States Constitution. This violation was two-fold.

First, Rust was not sentenced by a panel applying the beyond a reasonable doubt standard for aggravating circumstances … The proper standard was not applied until the Nebraska Supreme Court reviewed Rust's sentence. However, the Supreme Court has recognized that "when state law creates for a defendant a liberty interest in having a jury make particular findings, speculative appellate findings will not suffice to protect that entitlement for due process purposes." *Clemons*, 494 U.S. at 746, 110 S.Ct. at 1447. Here, Nebraska created a liberty interest in having a panel of judges make particular findings, specifically, the proper weight to be given aggravating circumstances based on facts proven beyond a reasonable doubt. Rust was deprived of this interest, a deprivation so serious that it cannot be cured by appellate review. The sentencing panel's use of an improper standard contaminated all its findings regarding aggravating circumstances. Rust simply never had the opportunity to be sentenced by a panel as contemplated in the Nebraska statutes….

The second fact of the constitutional violation here is the deprivation of any meaningful appellate review. Even if we assume that the Nebraska Supreme Court could have remedied the invalidity in the sentencing panel's determination by stepping in and "resentencing" Rust under the proper standard, the actions of the Nebraska Supreme Court would still violate due process. The whole point of the two-tiered sentencing procedure is that the initial determination is reviewed by an independent appellate court. The two-tier process would be subverted if the Nebraska Supreme Court could step in and fully

---

**20.** The Nebraska Supreme Court first held that aggravating circumstances must be proven beyond a reasonable doubt in *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881, *cert. denied*, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1979), decid-

ed the same day as the direct appeal in *Rust*. Thus, Rust's sentencing panel did not have the benefit of *Simants* when it made its factual findings regarding aggravating circumstances.

perform the work of the sentencing panel. Yet that is precisely what happened in this case. The Nebraska Supreme Court did not merely "review" the determinations of the sentencing panel, it effectively resentenced Rust....

*Rust v. Hopkins,* 984 F.2d at 1493.

As discussed previously the Nebraska Supreme Court performed an independent weighing of the evidence and resentenced petitioner. There is no material difference of procedure [21] in the resentencing of petitioner and the resentencing of Rust. In *Rust,* the Nebraska Supreme Court independently found the existence of aggravating circumstances. In petitioner's case, because of the district court's erroneous finding of one aggravating factor and its failure to acknowledge the existence of a mitigating factor in each woman's death, the Nebraska Supreme Court rejected the district court's sentencing decision and independently evaluated the existence, and weight, of all aggravating and mitigating circumstances. As in *Rust,* petitioner did not receive the benefit of the state's statutorily required two-tiered process and was denied the possibility of appellate review of a panel's independent factual findings. Like Rust, he "never had the opportunity [on remand] to be sentenced by a panel as contemplated in the Nebraska statutes." *Rust v. Hopkins,* 984 F.2d at 1493.

In *Rust* the Eighth Circuit discussed three independent reasons why *Clemons* did not require the denial of the writ. First, the Supreme Court in *Clemons* found that the laws of Mississippi created no protected interest in "hav[ing] a jury make findings that an appellate court also could make." *Clemons,* 494 U.S. at 747, 110 S.Ct. at 1447. However, *Rust* determined that a habeas petitioner under Nebraska law "has such an entitlement, namely a right to be sentenced ... by the sentencing panel," *Rust,* 984 F.2d at 1494, subject to appellate review. 984 F.2d at 1493. Petitioner has the same entitlement—to be sentenced by a panel, subject to appellate review.

Second, *Rust* differentiated *Clemons* based on the breadth of the Supreme Court's holding. The court in *Rust* stated, "[o]ur reading of *Clemons* and the cases that follow it convince us that the Court is simply authorizing reweighing of the *remaining* valid aggravating circumstances, not the *replacement* of invalid proceedings with corrected proceedings in the appellate court." *Rust,* 984 F.2d at 1494 (emphasis added). The court continued, "What the Nebraska Supreme Court did here is far beyond what was authorized in *Clemons;* while *Clemons* envisioned a limited cure, the Nebraska Supreme Court performed major corrective surgery." *Id.* at 1495.

The Nebraska Supreme Court in *Reeves III* went even further than did the state court in *Rust,* striking one aggravating factor with respect to Victoria Lamm and finding the existence of a mitigating factor in both Lamm's and Janet Mesner's deaths.[22] In petitioner's action the court explicitly performed a thorough and complete resentencing, independent of any fact-finding by the panel.

A reweighing procedure was mentioned in *Romano v. Oklahoma,* —— U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994), but in my view *Romano* is inapposite to this case. *Romano* was decided after the parties submitted briefs in the present action. In that case the defendant was sentenced to death in Oklahoma state court; one of the aggravating factors presented to the sentencing jury was that he had been previously sentenced to death and that the previous sentence was pending on appeal. While his direct appeal was pending in the second action, his prior death sentence was vacated by another court. Thus, the evidence supporting the aggravating factor was no longer present. The Oklahoma Court of Criminal Appeals disregarded the unsupported aggravating factor and reweighed the circumstances and determined that death was the proper sentence.

---

**21.** There is no issue in this case concerning the standard of proof; both the sentencing panel and the Nebraska Supreme Court applied the "beyond a reasonable doubt" standard.

**22.** This further distinguishes the present case from *Romano v. Oklahoma,* —— U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994), discussed further *infra.*

The United States Supreme Court granted certiorari on the following question: "Does admission of evidence that a capital defendant already has been sentenced to death in another case impermissibly undermine the sentencing jury's sense of responsibility for determining the appropriateness of the defendant's death, in violation of the Eighth and Fourteenth Amendments?" *Romano v. Oklahoma*, —— U.S. ——, 114 S.Ct. 380, 126 L.Ed.2d 330 (1993). However, in discussing that claim, the Court briefly mentioned the propriety of the Oklahoma appellate court's procedure of reweighing the circumstances when an aggravating factor had been found to be unsupported by the evidence:

> Petitioner also cites *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), but it, too, is inapposite. There we reversed the imposition of Johnson's death sentence because the only evidence supporting an aggravating factor turned out to be invalid, and because the Mississippi Supreme Court refused to reweigh the remaining, untainted aggravating circumstances against the mitigating circumstances. *Id.*, at 586, 590, n. 8, 108 S.Ct. at 1986–1987, 1989, n. 8. Similarly, in this case the only evidence supporting the "prior violent felony" aggravating circumstance was the judgment from petitioner's conviction for the Thompson murder. That evidence, like the evidence in *Johnson*, was rendered invalid by the reversal of petitioner's conviction on appeal. Here, however, the Oklahoma Court of Criminal Appeals struck the "prior violent felony" aggravator, reweighed the three untainted aggravating circumstances against the mitigating circumstances, and still concluded that the death penalty was warranted. [*State v. Romano*, 847 P.2d 368, 389, 393–94 (Okla.1993)]. The Court of Criminal Appeals' approach is perfectly consistent with our precedents, including *Johnson*, where we remanded without limiting the Mississippi Supreme Court's authority to reweigh the remaining aggravating circumstances against the mitigating circumstances.

*Romano v. Oklahoma*, —— U.S. at ——––——, 114 S.Ct. at 2010–12.

The statements about the state procedures appear to be dicta; *Clemons* was not discussed nor does it appear to have been argued. While the Court appears to give approval to some appellate reweighing, nothing in the opinion addresses the issue of having a liberty interest in a two-tiered system—an issue which was certainly not the focus of the grant of certiorari. Thus, while the discussion raises questions about the continuing validity of the second *Clemons* differentiation in *Rust* (and I think it does not), it most certainly does not vitiate the first *Rust* determination that Nebraska law creates a protected liberty interest which was denied the petitioner in this action as well as in *Rust.*

The third way in which *Rust* differentiated *Clemons* was its conclusion that the Nebraska Supreme Court had failed to adequately describe its conclusion that any error in the sentencing court was harmless beyond a reasonable doubt. *Rust*, 984 F.2d at 1495. This concern is not present in petitioner's case. In *Reeves III* the court clearly determined that the trial court's error was *not* harmless. The court did not attempt to salvage the findings of the sentencing panel. Rather, it performed a full-scale resentencing.

I conclude that *Rust* is controlling law in this case and requires a finding that petitioner possessed a liberty interest in having a two-tiered sentencing process. Respondent concedes, in fact he actively argues, that petitioner did not receive that two-tiered process but that the court in *Reeves III* was the sole sentencing body. Its determinations were made completely independently from those made by the sentencing panel. Petitioner was deprived of the liberty interest when the Nebraska Supreme Court resentenced him independent of the findings of the sentencing panel. As in *Rust*, petitioner, on remand from the Supreme Court "simply never had the opportunity to be sentenced by a panel as contemplated in the Nebraska statutes." Neither

*Clemons* [n]or any other decision on this issue supports the proposition that an appellate court can provide an adequate

"cure" when the entire first tier of the sentencing process was invalid.

*Rust*, 984 F.2d at 1493.

Petitioner was deprived of his state created liberty interest without due process of law. He is currently sentenced to death by electrocution for two counts of felony murder. The violation of his constitutional rights infects both sentences. As the constitutional violation occurred in petitioner's sentencing proceedings, it does not affect the finding of guilt. Therefore a resentencing is in order, but not a new trial.

To remedy the violation the writ should be granted and petitioner should be resentenced to life imprisonment unless the state provides a new sentencing hearing in the state district court within a reasonable time after this action becomes final. I shall so recommend.

## VI. REMAINING CLAIMS

I need not address petitioner's remaining claims (5, 6, 26, 27, 34, 36 and 38) in light of my resentencing recommendation on claims 31 and 32 and the fact that the claims are not likely to recur on resentencing. *See Rust v. Hopkins*, 984 F.2d at 1495–86.

## VII. EVIDENTIARY MOTIONS

Petitioner has filed four motions concerning evidentiary issues. In filing 68 petitioner moved for an evidentiary hearing. The progression order instructed petitioner to describe, in the main habeas brief, the issues which would be involved in the hearing. Petitioner's brief indicates that three issues would be involved in the hearing: (1) the ineffective assistance claims in filing 44; (2) testimony of Robert Creger, then petitioner's attorney, regarding the oral argument before the Nebraska Supreme Court on remand; and (3) evidence regarding his allegations that the prosecutor violated his equal protection rights when he charged petitioner with only felony murder.[23]

23. For references purposes, I shall refer to these issues as 68(1), 68(2) and 68(3) respectively.

24. I shall refer to this motion as issue 69. Further, I shall refer to the remaining evidentiary

In filing 69 petitioner moved to expand the record to include the transcript of the oral arguments to the Nebraska Supreme Court on remand.[24] In filing 72 I ordered that the transcript of the arguments be filed. After being informed that no such transcript existed, I withdrew the order in filing 72. (Filing 74). The motion to expand the record technically remains pending.

In filing 95 petitioner moved to be granted leave to conduct discovery. He sought to propound three interrogatories regarding the equal protection in charging issue mentioned in filing 68(3). In filing 97 petitioner moved to expand the record to include (1) the answers to the interrogatories from filing 95 and any related documents which may be produced as a result of that discovery; (2) Creger's testimony mentioned in filing 68(2); and (3) records compiled by Scott Helvie, Lancaster County Chief Public Defender, regarding the transcripts of other first degree murder cases in the state of Nebraska.

■ Issue 68(1) seeks to hold an evidentiary hearing on claim 44. Previously, I concluded that claim 44 was procedurally defaulted and could not provide grounds for habeas relief. Holding an evidentiary hearing on such a claim would serve no purpose. I shall deny the motion in filing 68 insofar as it relates to this issue.

■ Issues 68(2), 69 and 97(2) seek to introduce evidence regarding the oral arguments on remand to the Nebraska Supreme Court. These issues apparently seek to elicit information to support petitioner's claim that he was denied notice and an opportunity to respond to the court's resentencing. (See claim 34). Because I have recommended the writ be granted on other grounds, I did not consider this claim. Therefore, the information which would be elicited through these issues would further no inquiry relevant to this report and recommendation. If the writ is granted and petitioner is resentenced, this claim will likely not recur. Therefore, I shall

motions in a manner similar to this motion and the motion discussed in the immediately preceding footnote.

deny the evidentiary motions insofar as they relate to issues 68(2), 69 and 97(2).

Issues 68(3), 95, and 96(1) relate to petitioner's assertion that the prosecutor charged him with only felony murder in violation of the Fourteenth Amendment's equal protection clause. As indicated earlier in this report, petitioner failed to raise this claim in the amended petition, or in the alternative failed to fairly present such a claim in state court, leading to a procedural default.[25] In either case, this argument cannot provide grounds for the writ being granted. Therefore, I shall deny the evidentiary motions insofar as they relate to issues 68(3), 95, and 96(1).

■ Issue 96(3) relates to petitioner's argument that the sentencing panel sentenced petitioner without properly applying LB 711, which petitioner alleges requires a comparison of the crime charged with all other first degree murder cases in the state of Nebraska. At least two barriers exist to allowing this evidence to be introduced. First, my review of the amended petition discloses no claim which corresponds to this argument. As noted earlier, the amended petition, not the brief, governs what claims may provide the basis for habeas relief. Second, to the extent such an argument is actually supported by a claim in the amended petition, petitioner argues this issue only about the sentencing panel's actions, not the resentencing on remand. Again, petitioner is not "in custody" because of the actions of the sentencing panel. Therefore, to the extent the argument raises a claim, that claim is not cognizable in this habeas action. Therefore, I shall deny the evidentiary motions insofar as they relate to issue 96(3).

## CONCLUSION

As indicated in this report, a number of the claims raised in the amended petition were not argued in the brief and are abandoned. Further, habeas relief may not be granted on the basis of a claim not raised in the amended petition; nor may it be granted on the basis of procedurally defaulted claims, none of which petitioner was able to excuse.

All of the claims properly before the court regarding the guilt/innocence phase of the trial are without merit. Further, habeas relief may not be granted on the basis that the state district court or the state supreme court on direct appeal improperly sentenced petitioner. Petitioner's current sentences, as argued by respondent, were determined by the Nebraska Supreme Court in *Reeves III* on remand from the United States Supreme Court. I have concluded that the sentencing procedures were improper and violated petitioner's constitutional right to due process. The writ should therefore be granted on the basis of claims 31 and 32.

THEREFORE HEREBY IT IS ORDERED that:

1. Petitioner's motion for an evidentiary hearing (filing 68) is denied.

2. Petitioner's motions to expand the record (filings 69 & 97) are denied.

3. Petitioner's motion to conduct discovery (filing 95) is denied.

FURTHER, IT HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that petitioner's amended petition for writ of habeas corpus (filing 58), be granted with respect to that portion of the petitioner's claims 31 and 32 which challenge the Nebraska Supreme Court's resentencing procedures in *Reeves III* for both of his death sentences, and otherwise be denied as discussed in the report above. Accordingly, petitioner's sentences should be reduced to life imprisonment unless, within a reasonable time after judgment becomes final, the state initiates capital resentencing proceedings in the district court.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.